NEOGEN CORPORATION, a Michigan Corporation, Plaintiff,

v.

NEO GEN SCREENING, INC., a Pennsylvania Corporation, Defendant.

No. 5:00-CV-37.

United States District Court, W.D. Michigan, Southern Division.

Aug. 21, 2000.

Mark R. Fox, Fraser, Trebilcock, Davis & Foster, PC, Lansing, MI, for Neogen Corporation, a Michigan Corporation, plaintiff.

Richard C. Kraus, Smith, Haughey, Rice & Roegge, East Lansing, MI, Kenneth P. McKay, K. Patrick McKay Law Office, Pittsburgh, PA, for Neo Gen Screening, Inc., a Pennsylvania Corporation, defendant.

## OPINION

ROBERT HOLMES BELL, District Judge.

Plaintiff, Neogen Corporation ("Neogen"), a Michigan corporation, commenced this action against Defendant, Neo Gen Screening ("Neo Gen"), a Pennsylvania corporation, alleging trademark infringement (Count I), federal dilution and unfair competition (Count II), common law trademark infringement (Count III), common law unfair competition (Count IV), violation of the Michigan Consumer Protection Act (Count V), violation of the Michigan Pricing and Advertising Act (Count VI), and unjust enrichment (Count VII). Before the Court is Defendant's motion to dismiss

for lack of personal jurisdiction pursuant to FED.R.CIV.P. 12(b)(2). In the alternative, the Defendant moves to transfer venue on the grounds of *forum non conveniens* pursuant to 28 U.S.C. § 1404(a). The Court heard oral argument on August 10, 2000. Having examined the parties' briefs and the relevant case law, the Court grants the Defendant's motion to dismiss for the reasons stated herein.

## I. Facts

Plaintiff's principal place of business is Lansing, Michigan, where it develops and markets solutions for food and animal safety. Plaintiff also has places of business in Kentucky, Illinois, and Florida. Plaintiff alleges that it has used the name and mark "Neogen®" since at least 1982, and that it has been granted federal trademark registration for the mark. Plaintiff contends that it has used its mark continuously and extensively in interstate commerce.[1] Plaintiff maintains a website at www.neogen.com.

Defendant is located exclusively in Pennsylvania, where it performs diagnostic testing of blood samples from newborn infants.[2] Approximately ninety percent of its business is generated through contracts with hospitals and governmental agencies, none of which are located in Michigan.[3] Defendant performs approximately 215,000 tests annually. Of the newborns screened last year, approximately 185,000 were from Pennsylvania, 18,000 from the District of Columbia, 5,000 from Ohio and Louisiana, and 5,000 from foreign countries.[4] Physicians not under contract with Defendant can obtain testing services by telephoning or e-mailing Defendant to request information and/or "filter blood collection forms." [5]

Defendant then mails the collection form to the physician, and the physician collects the sample and sends it back to Defendant for testing. The physician can then obtain the test results through the mail, or on Defendant's website with a password provided by Defendant. Last year, Defendant tested fourteen samples for Michigan coroners, and expects about the same number for 2000.[6] Defendant's only continuous advertising is on its website, www.neogen-screening.com. The website provides information about Defendant's services, e-mail addresses for personnel, and allows would be customers to print forms that must be mailed along with blood samples to the Defendant. Defendant's website can be accessed via the Internet by anyone, anywhere in the world. Plaintiff claims that the Defendant's contacts with Michigan provide this Court with both general and specific personal jurisdiction.

## II. Standard of Review

The burden of establishing jurisdiction is on the plaintiff. *Weller v. Cromwell Oil Co.*, 504 F.2d 927 (6th Cir.1974); *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1168 (6th Cir.1988) ("Where personal jurisdiction is challenged in a Rule 12(b) motion, the plaintiff has the burden of establishing that jurisdiction exists."). However, if the district court determines to decide the issue solely on the basis of written materials, the plaintiff is required only to make a *prima facie* case of jurisdiction, that is, he need only "demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir.1996); *Welsh v. Gibbs*, 631 F.2d 436, 438–39 (6th Cir.1980).[7]

---

1. Pl's Br. in Opp'n at 1.

2. Def's Mtn to Dismiss at 3.

3. Def's Mtn to Dismiss at 4.

4. Def's Mtn to Dismiss at 4.

5. Def's Mtn to Dismiss at 5.

6. Def's Mtn to Dismiss at 4.

7. In ruling on a motion to dismiss pursuant to Rule 12(b)(2) a Court may: (1) determine the motion on the basis of affidavits alone; (2) permit discovery in aid of the motion; or (3) conduct an evidentiary hearing on the merits of the motion. The method selected will determine Plaintiff's burden. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir.1991).

In order to establish personal jurisdiction both the forum state's long-arm statute and the Due Process requirements of the Fourteenth Amendment must be satisfied. *Reynolds v. Intern. Amateur Athletic Federation*, 23 F.3d 1110, 1115 (6th Cir.1994). Michigan's long-arm statute for general personal jurisdiction is co-extensive with the "continuous and systematic contacts" required to satisfy federal due process. *Green v. Wilson*, 455 Mich. 342, 349, 565 N.W.2d 813 (1997). The Court first asks whether the statute applies, and if so, whether due process requirements are satisfied. *See Green v. Wilson*, 455 Mich. 342, 565 N.W.2d 813 (1997) (plurality opinion). The Due Process Clause requires that the exercise of personal jurisdiction comport with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

### III. General Personal Jurisdiction

"In analyzing the due-process limits of personal jurisdiction, a distinction is made between 'general' jurisdiction and 'specific' jurisdiction.... In a case of general jurisdiction, a defendant's contacts with the forum state are of such a 'continuous and systematic' nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state.... In a specific jurisdiction case, 'a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum.' " *Third Nat. Bank in Nashville v. WEDGE Group Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989) (citations omitted).

General personal jurisdiction does not exist in this case. Defendant's contacts with Michigan were neither continuous or systematic. Apart from the maintenance of a website, which could be visited by a citizen of any state, the record shows only random and unsolicited requests for testing by coroners in Michigan. These requests totaled fourteen of more than 200,-000 tests performed by Defendant in 1999. Such attenuated contacts with a state do not put a defendant on notice that it might be haled into court here.

### IV. Specific Personal Jurisdiction

#### A. *Michigan Long–Arm Statute*

Plaintiff contends that jurisdiction exists pursuant to Michigan's long-arm statute, M.C.L. §§ 600.715 (1) & (2), which extends limited personal jurisdiction to out-of-state defendants on the basis of specific acts or contacts within the state.[8] For purposes of the long-arm statute, "any" is defined broadly to mean each and every. *Sifers v. Horen*, 385 Mich. 195, 199 n. 2, 188 N.W.2d 623 (1971). The transaction of any business requirement is satisfied by "the slightest act of business in Michigan." *Evans Tempcon, Inc. v. Index Industries, Inc.*, 778 F.Supp. 371, 374 (W.D.Mich.1990); *Lanier v. American Board of Endodontics*, 843 F.2d 901, 909 (6th Cir.1988) (citing *Sifers*).

In this case, Defendant mailed test results to Michigan or provided a password, with which a client could obtain test results from the Internet. In addition, Plaintiff alleges that the Court can exercise personal jurisdiction on the basis that Defendant caused consequences to occur in Michigan pursuant to M.C.L. § 600.715(2). Specifically, Plaintiff asserts Defendant's out of state activities caused an adverse economic effect in Michigan. The language of the Michigan long-arm statute likely is

---

8. M.C.L. § 600.715 provides in pertinent part:
The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:
(1) The transaction of any business within the state.
(2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

broad enough to encompass the Defendant's activity.

## B. *Federal Due Process Requirements*

■ Nevertheless, Defendant's contacts with the state must also satisfy due process. *Lanier,* 843 F.2d at 909. Under the federal constitution, long-arm jurisdiction may only be asserted in this case if: (1) Defendant has purposely availed itself of the privilege of acting in Michigan or causing a consequence in Michigan; (2) the cause of action arises from Defendant's activities in Michigan; and (3) the acts of Defendant or consequences caused by it have a substantial enough connection with Michigan to make the exercise of jurisdiction over Defendant reasonable and fair. *Conti v. Pneumatic Products Corp.,* 977 F.2d 978, 981 (6th Cir.1992).

The purposeful availment prong, the "constitutional touchstone" of the minimum contacts analysis, examines whether the defendant has purposefully established minimum contacts with the forum state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (citing *International Shoe Co.,* 326 U.S. at 319, 66 S.Ct. 154). Jurisdiction may be proper where, "contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum state." *Burger King Corp.,* 471 U.S. at 475, 105 S.Ct. 2174 (citing *McGee v. International Life Insurance Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)). "Thus where the defendant 'deliberately' has engaged in significant activities within a State ... or has created 'continuing obligations' between himself and residents of the forum ... he manifestly has availed himself of the privilege of conducting business there...." *Burger King Corp.,* 471 U.S. at 476, 105 S.Ct. 2174. Under these circumstances, the defendant could reasonably foresee being haled into court there. *World-Wide Volks-*

*wagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490; 297 (1980).

With the advent of the Internet has come the need to adapt jurisdictional law. The cases dealing with the relationship between the Internet and personal jurisdiction "reveal[ ] that the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Zippo Manu. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119, 1124 (W.D.Pa.1997). In order to take into account the unique aspects of this new technology, many courts, including the Fifth, Ninth, and Tenth Circuit Courts of Appeal have chosen to follow the rule set out in *Zippo.*[9] The *Zippo* court fashioned a "sliding scale" to measure websites and Internet activity to determine whether a defendant has purposefully availed itself of the privileges of a forum state via the Internet. *Id.*

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the *knowing* and *repeated* transmission of computer files over the Internet, personal jurisdiction is proper.... At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive website that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction.

*Id.* (emphasis added) (citations omitted).

District courts have not exercised personal jurisdiction over cases dealing with passive websites because "a finding of jurisdiction ... based on an Internet website would mean that there would be national, indeed world wide personal jurisdiction over anyone and everyone who establishes

---

**9.** See *Soma Medical Intern. v. Standard Chartered Bank,* 196 F.3d 1292 (10th Cir.1999); *Mink v. AAAA Development LLC,* 190 F.3d 333

(5th Cir.1999); *Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414 (9th Cir.1997).

an Internet website. Such nationwide jurisdiction is not consistent with traditional personal jurisdiction case law...." *Weber v. Jolly Hotels,* 977 F.Supp. 327, 333 (D.N.J.1997) (citing *Hearst Corp. v. Goldberger,* No. 96 CIV 3629, 1997 WL 97097, at *1 (S.D.N.Y. Feb.26, 1997)) (internal quotation marks omitted). *See also Cybersell, Inc.,* 130 F.3d at 418 ("[N]o court has ever held that an Internet advertisement alone is sufficient to subject the advertiser to jurisdiction in the plaintiff's home state."). Between the two extremes lies a "middle ground" where information can be exchanged between the viewer and the host computer. In such a case, the court examines the level of interactivity and the commercial nature of the exchange of the information. *Zippo,* 952 F.Supp. at 1124.

In *Mink v. AAAA Development LLC,* 190 F.3d 333 (5th Cir.1999), the Fifth Circuit faced a factual scenario remarkably similar to the case at bar. There, the only interactive functions of the defendant's website were a printable mail in order form and e-mail address. The website also provided the defendant's toll-free telephone number and mailing address. The court observed that orders could not be taken through the website. Customers were required to send in order forms via regular mail or fax. The Fifth Circuit characterized the site as nothing more than "passive advertisement which is not grounds for the exercise of personal jurisdiction." *Id.* at 337.

Similarly, in *Ty, Inc. v. Clark,* No. 99 C5532, 2000 WL 51816 (N.D.Ill. Jan.14, 2000), the defendants, residents of Cheshire, England, operated a website that allowed potential customers to obtain specific information about any product for sale by the defendants on the website. Although the defendants did not take orders over the Internet, individuals could e-mail them, and print order forms which could be used to purchase products via fax, telephone, or regular mail. *Id.* at *2. The court refused to exercise jurisdiction stating that although the website was not "completely passive," the defendants did not accept online orders for merchandise and the website was not interactive enough to justify haling them into court in Illinois. *Id.* at *4.

The district court in *Berthold Types Ltd. v. European Mikrograf Corp.,* 102 F.Supp.2d 928 (N.D.Ill.2000), a trademark infringement case, reached a similar conclusion. The court used the sliding scale framework to determine if the type of Internet activity is sufficient to establish personal jurisdiction. *Id.* at 932. The defendant did not transact business directly over the Internet. No orders were taken and no contracts were entered into over the Internet. Rather, customers were instructed to fill out a service agreement and mail it, along with payment, to the national dealer. The court further noted that "nothing on the website is specifically targeted at Illinois consumers." *Id.* The court concluded that the case fell into the "middle ground" of the sliding scale and that the defendants' level of interactivity was insufficient to exercise personal jurisdiction on the basis of the defendants' Internet activities.

Conversely, in *Sports Authority Michigan, Inc. v. Justballs, Inc.,* 97 F.Supp.2d 806 (E.D.Mich.2000), the district court determined that jurisdiction was proper based on the defendant's highly interactive website. In that case the defendant sold goods exclusively over the Internet. *Id.* at 813. In addition to providing an e-mail address, the defendant posted products for sale on its website and accepted credit card payments via its website. *Id.* at 814. Customers could also track the progress of their orders on the defendant's website. *Id.*

The Court applies these principles to the facts of the case at bar. The interactive functions of Defendant's website are an e-mail directory that lists employees' e-mail addresses, the ability to print collection forms, which must be mailed along with blood specimens to Defendant via regular mail, and the availability of customers who have received a password from

Defendant to access test results. Beyond these functions, Defendant's website serves as an advertisement, which provides information about Defendant and the services it offers. Unlike the website in *Sports Authority,* no orders are taken, and no contracts are entered into it. There is nothing in the record that indicates that the Defendant's website was targeted in any way to Michigan. The Court concludes that the Defendant's website is akin to the websites in *Mink, Ty Inc.,* and *Berthold* and lies toward the passive end of the spectrum of interactivity.

Notwithstanding, the Plaintiff urges that the fourteen tests performed by Defendant, in Pennsylvania for physicians in Michigan are sufficient to establish jurisdiction. Contrary to Plaintiff's suggestion that Defendant must "manifest a desire to not do business in Michigan," [10] purposeful availment "is something akin to a deliberate undertaking to do or cause an act to be done in Michigan or conduct which can be properly regarded as a prime generating cause of the effects resulting in Michigan, something more than a passive availment of Michigan opportunities." *Jeffrey v. Rapid Am. Corp.,* 448 Mich. 178, 188, 529 N.W.2d 644 (1995).

In *Kerry Steel, Inc. v. Paragon Industries, Inc.,* 106 F.3d 147 (6th Cir.1997), the plaintiff, a Michigan corporation, made unsolicited phone calls to the defendant, an Oklahoma corporation. The plaintiff offered to sell a large quantity of steel coils to the defendant, and the defendant accepted. Later, when the defendant failed to pay for the steel, the plaintiff attempted to bring suit in Michigan. The Sixth Circuit affirmed the district court's dismissal of the action on the grounds that the contract and interstate electronic communications were not enough to establish jurisdiction. The Sixth Court pointed out that because the defendant had not "reached out" to Michigan, there was no reason to believe the defendant intended to establish "con-

tinuing relationships and obligations" in Michigan. *Id.* at 151.

Similarly, Defendant has not "reached out" to Michigan in a way that suggests an intention to establish "continuing relationships and obligations." As the Court has observed, Defendant did not solicit these transactions. Instead, it responds to unsolicited and occasional requests by Michigan residents for services it provides in Pennsylvania.

*C. Effects Test*

Plaintiff also argues that limited jurisdiction exists under the effects test set forth in *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). Plaintiff contends that Defendant's actions caused Plaintiff economic harm in Michigan, and therefore, jurisdiction is proper. Plaintiff also cites *Panavision International, L.P. v. Toeppen,* 141 F.3d 1316 (9th Cir.1998) to support the application of the effects doctrine to a trademark case. These cases are distinguishable.

In *Calder,* an actress who resided in California brought a libel action in California against a magazine written and published in Florida. *Calder,* 465 U.S. at 789, 104 S.Ct. 1482. The Supreme Court determined that the defendant knew its allegedly libelous activities had a potentially devastating impact on the plaintiff in the state where she lived and worked. Thus, it concluded, the California court was justified in exercising personal jurisdiction over the defendant. Under the effects test articulated by the Supreme Court, a court may exercise personal jurisdiction over a nonresident defendant acting outside the forum who intentionally directs tortious conduct toward the forum state knowing it will cause harm to a forum resident. *Calder,* 465 U.S. at 791, 104 S.Ct. 1482.

In *Panavision,* the defendant, an Illinois resident, intentionally registered Panavision's mark as his domain name for a website to allegedly force Panavision to

pay a large sum of money in order to use its name as a web address. The court held that the "purposeful availment" requirement necessary for specific personal jurisdiction was satisfied under the effects test because the defendant's conduct, "as he knew it likely would, had the effect of injuring Panavision in California where Panavision has its principal place of business and where the movie and television industry is centered." *Panavision*, 141 F.3d at 1322.

The mere fact that a nonresident defendant's act causes an effect in the forum state, or even that such effect was foreseeable, in not enough by itself to support jurisdiction under *Calder*. Courts have carefully limited the application of the effects test to cases where the nonresident defendant commits an intentional tort knowing the conduct will cause harm to the plaintiff in the forum state. As an example, the Third Circuit has articulated the effects test to require plaintiff to show that:

> (1) The defendant committed an intentional tort;
>
> (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; [and]
>
> (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.... [I]n order to make out [this] prong, the plaintiff must show that the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum.

*IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 265–66 (3d Cir.1998). *See also Waffenschmidt v. MacKay*, 763 F.2d 711, 723 (5th Cir.1985) (To satisfy the effects test "the effect in the forum must have been purposeful"); *Simon v. Philip Mor-*

*ris, Inc.*, 86 F.Supp.2d 95, 132 (E.D.N.Y. 2000) ("The main point of the [*Calder*] case is its distinction between intentional and negligent wrongdoing for purposes of assessing minimum contacts.... Where intentional misconduct is at issue, the wrongdoer should reasonably anticipate being called to answer for its conduct wherever the results of that conduct are felt.") (citations omitted); *First Trust Nat'l Ass'n v. Jones, Walker, Waechter, Poitevent, Carrere & Denegre*, 996 F.Supp. 585, 590 (S.D.Miss.1998) ("The effects test is generally associated with allegations relating to intentional torts."); *EFCO Corp. v. Aluma Systems, USA, Inc.*, 983 F.Supp. 816, 821 (S.D.Iowa 1997) ("Two conditions must be met for the *Calder* effects test to apply. First, the defendant's act must be intentional and not merely negligent. Second, the 'focal point' of the act, i.e., where the 'brunt' of the harm is intended, must be within the chosen forum"); and *Zumbro, Inc. v. California Natural Products*, 861 F.Supp. 773, 782 (D.Minn.1994) (noting that the effects test "generally has been limited to intentional torts").

Where jurisdiction was found to be proper in the context of intellectual property claims, there was a finding that the infringement was intentional. In *Dakota Industries, Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384 (8th Cir.1991), a trademark infringement case, the court found jurisdiction over a California corporation in South Dakota proper because the case involved "intentional tortious wrongdoing—namely, the use of the trademark with knowledge of the infringement" that was "uniquely aimed at the forum state" with knowledge that the injury would be felt by the plaintiff in South Dakota. *Id.* at 1391. *See Panavision International, L.P.*, 141 F.3d at 1316.

■ This case does not involve the type of intentional behavior demonstrated in *Calder* and *Panavision*. There is no evidence of intentionally tortious conduct on the part of Defendant.

Because Plaintiff has not met its burden of making a prima facie case of jurisdiction, this case is dismissed. An order consistent with this opinion will be entered.

### ORDER

In accordance with the opinion entered this date,

**IT IS HEREBY ORDERED** that Defendant's motion to dismiss for lack of personal jurisdiction (Docket #8) is **GRANTED.**

**IT IS FURTHER ORDERED** that the complaint is dismissed in its entirety.