**SUNSHINE DISTRIBUTION, INC., Plaintiff,**

v.

**THE SPORTS AUTHORITY MICHIGAN, INC., J.D. Components Co., Ltd., and Razor U.S.A., LLC, Defendants.**

No. 00–CV–75474–DT.

United States District Court, E.D. Michigan, Southern Division.

July 11, 2001.

Mark A. Cantor, Southfield, MI, for Plaintiff.

Alexander Fraser, MacKinnon, Los Angeles, CA, Glenn E. Forbis, Bloomfield Hills, MI, Brian D. Sieve, Chicago, IL, for Defendant.

## *OPINION*

DUGGAN, District Judge.

This is a trademark infringement and unfair competition action in which Plaintiff Sunshine Distribution, Inc., alleges that Defendants' use of its "Razor" name and mark in connection with the sale of scooters is confusingly similar to Plaintiff's "Razor" name and mark for inline skates and other accessories. Plaintiff has named the scooter manufacturer, J.D. Components Co., Ltd. ("J.D."), J.D.'s exclusive United States distributor, Razor U.S.A., LLC ("Razor"), and a local retailer, The Sports Authority of Michigan ("Sports Authority"), as defendants to this action. This matter is currently before the Court on Defendant J.D.'s motion to dismiss for lack of personal jurisdiction.[1] Oral argument regarding Defendant's motion to dismiss was heard on April 18, 2001.[2] For the reasons stated below, Defendant's motion to dismiss shall be denied.

### *Background*

The following background represents the facts taken in a light most favorable to Plaintiff. On January 3, 1995, Plaintiff Sunshine Distribution, Inc., began using the marks "Razor" and "Razors" in connection with its inline skates sold within the United States. In addition to inline skates, Plaintiff uses the mark in conjunction with various inline skate accessories and clothing, such as protective gear, wheels, carrying straps, and bags. Plaintiff's Razor products are sold at various chain and speciality sporting goods stores.

Defendant J.D. Components Co., Ltd., is a Taiwanese corporation that has traditionally manufactured bicycle frames and other speciality components. In January of 1999, Defendant began manufacturing a "Razor" brand kick scooter using a mark that, according to Plaintiff, is confusingly similar to its Razor mark.

In March 1999, Defendant began selling its Razor scooters to The Sharper Image, a California-based retailer with speciality stores throughout the United States. The Sharper Image sells Defendant's Razor scooter through its stores, including its stores in Troy and Novi, Michigan, mail-order catalogs, and Internet website.

In February of 2000, Defendant filed a trademark application for its Razor mark in connection with platform trolleys, and in June and July of 2000, Defendant filed various "intent-to-use" trademark applications for its Razor mark in connection with, among other things, skates, skateboards, roller skates, clothing articles, protective helmets, non-motorized scooters for personal amusement, toy scooters, model scooters, rollerboards, structural parts for scooters, and platform trolleys.

In June of 2000, Razor U.S.A. was formed. On July 1, 2000, an oral agree-

---

1. Plaintiff has filed a "Notice of Objections to Unsupported and False Factual Representations Contained in Defendant J.D. Components Co., Ltd.'s Motion to Dismiss." As these same objections were discussed in Plaintiff's response to Defendant J.D.'s motion to dismiss, and any factual discrepancies must be viewed in a light most favorable to Plaintiff, the Court sees no need to address Plaintiff's Notice of Objections separately. *See CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1262 (6th Cir.1996) ("When, however, a district court rules on a jurisdictional motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(2) without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff.").

2. For purposes of this Opinion only, the term "Defendant" shall refer exclusively to Defendant J.D. Components Co., Ltd.

ment was reached whereby Razor U.S.A. became Defendant's exclusive distributor for scooters and scooter-related products in North America. This oral agreement was confirmed by a written agreement dated August 18, 2000. Razor U.S.A. currently markets a number of Defendant's products throughout the United States. According to Defendant, despite its exclusive agreement with Razor U .S.A., it still sells Razor scooters directly to The Sharper Image per a pre-existing agreement.

The agreement between Defendant and Razor USA also granted Razor a perpetual royalty-free license to use all of Defendants' intellectual property rights, including trademarks, and the right to register such marks under their own name. On August 14, 2000, Razor U.S.A. filed an intent-to-use trademark application for the Razor mark in connection with sunglasses, video games, watches, backpacks, t-shirts, and caps.

Although one of Defendant's websites refers to Razor USA as its "North American Subsidiary[sic]" (Pl.'s Resp., Ex. J at 5), Defendant asserts that it owns no interest in Razor U.S.A. and has no control over Razor U.S.A.'s day-to-day business (Wang Dec. ¶ 10). Defendant admits, however, that its President, Shue Te Tsai, independently owns 60% of Razor U.S.A. (Wang Dec. ¶ 11).

Razor U.S.A. sells Defendant's Razor scooters to The Sports Authority Michigan, Inc., the operator of several retail sporting goods stores called "The Sports Authority" located throughout Michigan. The Sports Authority Michigan sells Defendant's Razor brand scooters to the public through its various stores, as well as an Internet website.

On December 19, 2000, Plaintiff filed this suit against Defendant, Razor U.S.A., and The Sports Authority Michigan, asserting a violation of the Lanham Act (Count I) and unfair competition (Count II). On February 5, 2001, Defendant filed a motion to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction, asserting that it has no direct contacts with the State of Michigan that would justify an exercise of personal jurisdiction by this Court. Plaintiff has filed a response to Defendant's motion contending that this Court's exercise of personal jurisdiction over Defendant is proper. This Court agrees.

### Discussion

■■■ Plaintiff bears the burden of establishing personal jurisdiction over Defendant. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir.1991). To sustain this burden, Plaintiff must set forth specific facts showing that this Court has jurisdiction. Because the Court is relying solely upon the parties' pleadings, Plaintiff "must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal." *Id.* In determining whether Plaintiff has made a *prima facie* showing of personal jurisdiction, the Court is obligated to examine each of Plaintiff's factual allegations made in support of exercising personal jurisdiction over Defendant and determine whether such allegations, if true, would be sufficient to establish personal jurisdiction. *Id.* at 1459.

Plaintiff asserts two bases for personal jurisdiction over Defendant J.D. Components: (1) limited jurisdiction under Michigan's long-arm statute, MICH. COMP. LAWS § 600.715 and (2) the "national contacts" doctrine. Plaintiff relies upon the following facts in support of jurisdiction:

- In 1999, Defendant sold scooters directly to Viza Motors, an Arizona company, and The Sharper Image, a California-based retailer, some of which were ultimately sold in Michigan.

• Defendant has entered into an exclusive distributor agreement with Razor U.S.A. in California.

• Defendant has filed a number of trademark registrations with the United States Patent and Trademark Office.

• Defendant hosts two interactive websites that provide information regarding the Razor scooter, allow users to e-mail Defendant and present warranty claims, and provide links to their authorized distributers.

• Defendant places its website address on the scooter's packaging.

• Defendant provides a warranty on its scooters.

• Other non-party sporting goods stores sell Defendant's product in Michigan.

The task before this Court is to determine whether these contacts are sufficient to support an exercise of personal jurisdiction over Defendant.

*1. Limited Jurisdiction Under Michigan's Long–Arm Statute*

In determining whether personal jurisdiction exists over Defendant pursuant to Michigan's long-arm statute, this Court must apply "the law of the forum state, subject to the limits of the Due Process Clause of the Fourteenth Amendment." *CompuServe Inc. v. Patterson,* 89 F.3d 1257, 1266 (6th Cir.1996). In other words, " '[t]he defendant must be amenable to suit under the forum state's long-arm statute *and* the due process requirements of the Constitution must be met.' " *Id.* (quoting *Reynolds v. International Amateur Athletic Fed'n,* 23 F.3d 1110, 1117 (6th Cir.1994)) (emphasis added).

Michigan's long-arm statute provides for limited personal jurisdiction over a nonresident corporate defendant when the cause of action arises out of any one of five designated relationships between the defendant and the state. *See* MICH. COMP. LAWS § 600.715. Plaintiff asserts that the aforementioned conduct by Defendant fulfills the "transaction of any business" prong of § 600.715(1).

The Michigan Supreme Court has observed that as used in the long-arm statute, "the term 'any' means just what it says. It includes 'each' and 'every' [business transaction]." *Aaronson v. Lindsay & Hauer Int'l, Ltd.,* 235 Mich.App. 259, 263, 597 N.W.2d 227 (1999) (quoting *Sifers v. Horen,* 385 Mich. 195, 199 n. 2, 188 N.W.2d 623 (1971)).

Relying upon *Elsey & Son v. American Engineering Fabrics, Inc.,* 191 Mich.App. 146, 148, 477 N.W.2d 483 (1991), Plaintiff asserts that Defendant's act of warranting its products constitutes the "transaction of any business within the state." *Elsey* does not support such a broad assertion. As the Michigan Court of Appeals stated in *Elsey* in reversing the lower court's dismissal for lack of jurisdiction:

We believe M.C.L. § 600.715; M.S.A. § 27A.715 has been facially satisfied, *particularly under subsection 5, because defendant entered into a contract for materials to be furnished in this state.* We also believe that defendant's conduct was a prime generating cause of the effects resulting in Michigan. Defendant's certification of the material as satisfying Michigan testing requirements was a deliberate action calculated to make its product available to the Michigan market. It is obvious that plaintiff would not have purchased the product had defendant not certified it as meeting [Michigan Department of Transportation] requirements. Moreover, defendant must have contemplated being "haled" into a Michigan court in the event that the product failed the testing requirements. Defendant knew that the product was to be used in road construction in Michigan and that it needed to satisfy certain MDOT stan-

dards. Finally, this was not a singular transaction, but the last of five transactions with plaintiff.

*Id.* (emphasis added). Nothing in *Elsey* stands for the broad proposition that the warranting of a product, in and of itself, constitutes the transaction of business within the state.

Unlike the Defendant in this case, the defendant in *Elsey* had directly entered into a contract with a Michigan company, to furnish building materials in Michigan, that met Michigan certification requirements. Furthermore, *Elsey* did not involve the "transaction of any business." Rather, *Elsey* involved " a contract for services to be performed or for materials to be furnished in the state." It involved materials that were certified as meeting Michigan Department of Transportation specifications and were shipped by Defendant to Michigan. "When shipped, the material was certified by defendant as meeting those specifications and was shipped from defendant's place of business in Massachusetts ... to ... Monroe County, Michigan." *Id.* at 147, 477 N.W.2d 483. If this Court were to accept Plaintiff's proposition, any manufacturer that provided a general warranty on its products would be subject to jurisdiction under Michigan's long-arm statute. In this Court's opinion, neither Michigan's long-arm statute, nor due process, support such a result. Furthermore, even if the Court were to agree with Plaintiff's proposition that Defendant's warranty constitutes the transaction of business in Michigan, Plaintiff's argument would nonetheless fail as this cause of action does not "arise out" of Defendant's warranty.

Plaintiff's reliance on the district court's decision in *Kmart Corp. v. Key Industries, Inc.*, 877 F.Supp.2d 1048 (E.D.Mich.1994), is similarly misplaced. In *Kmart*, the district court found personal jurisdiction to exist based upon an unrefuted affidavit from plaintiff's counsel that the defendant "sold its work clothes having its trademark thereon through at least seven retail and wholesale outlets in the Detroit area." *Id.* at 1052. Unlike *Kmart*, Defendant does not sell its product to any retailer in Michigan.

▮ Plaintiff also asserts that Defendant's act of maintaining two web sites that are accessible to Michigan residents constitutes the transaction of business within the state. Courts generally determine whether personal jurisdiction is triggered in the Internet context "by examining the level of interactivity and commercial nature of the information found on the web site." *Sports Auth. Mich., Inc. v. Justballs, Inc.*, 97 F.Supp.2d 806, 812 (E.D.Mich.2000); *see also Neogen Corp. v. Neo Gen Screening, Inc.*, 109 F.Supp.2d 724, 728 (W.D.Mich. 2000). Such cases can be divided into three categories.

The first category includes Internet sites that are highly interactive, allowing users to download, transmit, or exchange information with the defendant via the computer, including on-line contracts between the defendant and the plaintiff. *Id.* at 813 (citing *CompuServe*, 89 F.3d at 1264). Courts have held that such sites are sufficient for a court to exercise personal jurisdiction over the defendant.

The second category includes passive websites, *i.e.*, sites that merely provide information. *Id.* Courts have declined to exercise personal jurisdiction in cases involving merely passive websites. *Id.* (citing *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418–19 (9th Cir.1997); *Bensusan Rest. Corp. v. King*, 937 F.Supp. 295, 301 (S.D.N.Y.1996), *aff'd*, 126 F.3d 25 (2d Cir. 1997)).

The third category involves a hybrid of the first two, "involving interactive web sites in which a user can exchange some

information with the host computer." *Id.* (citing *Stomp, Inc. v. NeatO, LLC,* 61 F.Supp.2d 1074 (C.D.Cal.1999)). With this third category of Internet sites, the personal jurisdiction inquiry becomes murky, often depending upon the specific circumstances of the case.

Plaintiff asserts that Defendant's websites exhibit a similar level of interactivity as the website in *Justballs* and therefore, provide a sufficient basis for this Court to exert personal jurisdiction over Defendant. This Court disagrees.

First, the defendant in *Justballs* sold its product exclusively over the Internet. *Id.* In fact, the district court stated that the one factor that "tip[ped] the balance in favor of exerting personal jurisdiction" in *Justballs* was the fact that the defendant's website allowed users to purchase products on-line. *Id.* at 814. It is undisputed that Defendant sells no product over the Internet. At most, Defendant provides users with a link to other sites from which its products may be purchased.

The district court in *Justballs* also found that the defendant had sold its product to Michigan citizens and more importantly, had targeted Michigan by offering goods that appealed directly to Michigan citizens, such as Detroit Lions, Detroit Tigers, and University of Michigan merchandise. *Id.* Nothing about Defendant's site or products is directly targeted toward Michigan consumers.

Instead, this Court finds Defendant's website more analogous to the website in *Neogen Corp.* The interactive functions of Defendant's websites consist solely of being able to e-mail Defendant and submit warranty claims. In this Court's opinion, such contacts do not constitute the transaction of business within Michigan; nor do such contacts support a conclusion that Defendant " 'reached out' to Michigan in a way that suggests an intention to establish

'continuing relationships and obligations.' " *Neogen,* 109 F.Supp.2d at 730.

In summary, Plaintiff has failed to convince this Court that Defendant is transacting business within Michigan. Plaintiff has therefore failed to establish grounds upon which this Court can exercise personal jurisdiction over Defendant under Michigan's long-arm statute. Because Plaintiff has failed to establish jurisdiction under Michigan's long-arm statute, the Court need not engage in a due process inquiry.

### 2. The National Contacts Doctrine and the Lanham Act

█ Plaintiff also asserts that Defendant is subject to personal jurisdiction in this Court under the "national contacts" doctrine. The "national contacts" doctrine is premised upon the theory that where a federal statute authorizes nationwide service of process, the due process requirements of the Fifth Amendment are implicated, requiring sufficient contacts with the nation as a whole, rather than sufficient contacts with the foreign state. The key requirement under the national contacts theory is a federal statute authorizing nationwide service of process.

As several courts have recognized, the Lanham Act does not authorize nationwide service of process. *See e.g., Chandler v. Barclays Bank P.L.C.,* 898 F.2d 1148, 1154 (6th Cir.1990) (stating that national contacts theory "is applicable solely in conjunction with a statutory national service provision"), *Wells Fargo & Co. v. Wells Fargo Express Co.,* 556 F.2d 406, 418 (9th Cir.1977) (refusing to aggregate national contacts because Lanham Act did not grant the court broad service of process powers); *Search Force, Inc. v. DataForce Int'l, Inc.,* 112 F.Supp.2d 771, 775 n. 8 (S.D.Ind.2000) (same); *Justballs, Inc.,* 97 F.Supp.2d at 809 (rejecting national contacts doctrine in trademark infringement

action under Lanham Act because no applicable provision of Lanham Act provided for nationwide service of process).

Plaintiff argues that none of these cases addressed the specific provision relied upon by Plaintiff to serve Defendant in this case, 15 U.S.C. § 1051(e).[3] The Court finds Plaintiff's argument unpersuasive. Section 1051 deals with registering a trademark on the principal register. Section 1051(e) states:

> (e) Designation of resident for service of process and notices
>
> If the applicant is not domiciled in the United States he shall designate by a written document filed in the Patent and Trademark Office the name and address of some person resident in the United States on whom may be served notices or process in proceedings affecting the mark. Such notices or process may be served upon the person so designated by leaving with him or mailing to him a copy thereof at the address specified in the last designations so filed. If the person so designated cannot be found at the address given in the last designation, such notice or process may be served upon the Director.

According to Plaintiff, this provision permits nationwide service of process.

Defendant, on the other hand, argues that § 1051 deals solely with proceedings before the Patent and Trademark Office, not with service for civil proceedings. This Court agrees. Section 1051(e) appears in the Lanham Act in connection with the principal register, not in connection with civil actions or the jurisdiction of the federal courts. *See* 15 U.S.C. § 1121 (regarding the jurisdiction of federal courts). Furthermore, § 1051(e) does not contain language similar to that which the Sixth Circuit has found authorizes nationwide service of process. *See Medical Mutual of Ohio v. deSoto*, 245 F.3d 561, 565 (6th Cir.2001) (finding that 29 U.S.C. § 1132(e)(2), which states that "process may be served in any other district where any defendant resides or may be found," confers nationwide service of process). Accordingly, Plaintiff's reliance upon § 1051(e) and the national contacts doctrine is unavailing.

### 3. National Contacts and Federal Rule of Civil Procedure 4(k)(2)

■ Although the Court finds that Defendant's contacts with the United States do not confer personal jurisdiction upon this Court by virtue of the Lanham Act, the Court does find that such contacts make an exercise of personal jurisdiction under Rule 4(k)(2) proper in this case.[4] Rule 4(k)(2) states:

> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

**3.** "In this case, plaintiff Sunshine brings a claim under Lanham Act, § 43(a) (15 U.S.C. § 1125(a)), and service of process was duly made on Defendant J.D.'s agent pursuant to the Lanham Act, § 1(e) (15 U.S.C. § 1051(e))." (Pl.'s Br. at 5).

**4.** The Court is aware that neither party cited or discussed the applicability of Rule 4(k)(2). However, the issue of whether a court can rely upon Rule 4(k)(2) despite the fact that neither party cited or discussed it was specifically addressed in the recent Seventh Circuit decision of *ISI International Inc. v. Borden Ladner Gervais, L.L.P.*, 256 F.3d 548 (7th Cir. 2001). As the Seventh Circuit stated, "Federal courts are entitled to apply the right body of law, whether the parties name it or not." (*Id.* at 551).

As the Advisory Committee Notes explain, Rule 4(k)(2) was enacted in 1993 to:

> [C]orrect[ ] a gap in the enforcement of federal law. Under the former rule, a problem was presented when the defendant was a non-resident of the United States having contacts with the United States sufficient to justify the application of United States law and to satisfy federal standards of forum selection, but having insufficient contact with any single state to support jurisdiction under state long-arm legislation or meet the requirements of the Fourteenth Amendment limitation on state court territorial jurisdiction. In such cases, the defendant was shielded from the enforcement of federal law by the fortuity of a favorable limitation on the power of state courts, which was incorporated into the federal practice by the former rule. In this respect, the revision responds to the suggestion of the Supreme Court made in *Omni Capital Int'l. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 111, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987).

As the United States Court of Appeals for the Fifth Circuit has explained:

> Rule 4(k)(2) thus sanctions personal jurisdiction over foreign defendants for claims arising *under federal law* when the defendant has sufficient contacts with the nation as a whole to justify the imposition of United States law but without sufficient contacts to satisfy the due process concerns of the long-arm statute of any particular state.

*World Tanker Carriers Corp. v. M/V Ya Mawlaya*, 99 F.3d 717, 720 (5th Cir.1996).

■ In essence, Rule 4(k)(2) acts as "a sort of federal long-arm statute," *United States v. Swiss American Bank, Ltd.*, 191 F.3d 30, 36 (1st Cir.1999), authorizing jurisdiction even in the absence of a provision granting nationwide service of process, *Central States, Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 941–42 (3d Cir.2000).

■ Under Rule 4(k)(2), the constitutional requirements are the same as with any other personal jurisdiction inquiry, *i.e.* relatedness, purposeful availment, and reasonableness, only in reference to the United States as a whole, rather than a particular state. *Id.See also World Tanker Carriers Corp.*, 99 F.3d at 720. "The defendant's national contacts take center stage because the rule applies only to situations in which federal courts draw jurisdictional authority from the federal sovereign (unreinforced by 'borrowed' state statutes), and, thus, the applicable constitutional requirements devolve from the Fifth rather than the Fourteenth Amendment." *Id.*

■ To succeed under Rule 4(k)(2), "(1) the plaintiff's claim must be one arising under federal law; (2) the putative defendant must be beyond the jurisdictional reach of any state court of general jurisdiction; and (3) the federal courts' exercise of personal jurisdiction over the defendant must not offend the Constitution or other federal law." *Id.* at 38; *Central States*, 230 F.3d at 940. It is undisputed that Plaintiff's claims arise under federal law, *i.e.*, the Lanham Act.

Furthermore, counsel for Defendant acknowledged at the hearing on April 18, 2001, that there was no greater likelihood that Defendant was subject to personal jurisdiction in any other state, including California, where Razor U.S.A. is located. According to counsel for Defendant, the same personal jurisdiction issue was previously asserted in a California action where the California court ultimately granted dismissal for lack of jurisdiction. As counsel for Defendant argued at the hearing, Defendant's involvement in the sale of scooters ended in Hong Kong and therefore, Plaintiff's only remedies, according to

counsel for Defendant, are an action in Taiwan or before the Patent and Trademark Office challenging Defendant's marks. The Court is satisfied, based upon counsel's representations at the hearing, that Defendant is not subject to personal jurisdiction in any state. *See Swiss Am. Bank,* 191 F.3d at 41 (applying a burden shifting scheme to Rule 4(k)(2) under which, after the plaintiff sets forth a *prima facie* case of the applicability of Rule 4(k)(2), the defendant shoulders the burden of producing evidence that it is subject to jurisdiction in one or more states, or that its contacts are constitutionally insufficient for personal jurisdiction).

■ Therefore, the only inquiry left for this Court to determine is whether its exercise of personal jurisdiction over Defendant pursuant to Rule 4(k)(2) comports with due process under the Fifth Amendment. The Court is satisfied that Plaintiff's claims arise out of Defendant's contacts with the United States, the first step of the due process inquiry. Plaintiff's claims for infringement and unfair competition stem directly from Defendant's sales to American distributors, and specifically, Defendant's exclusive distributor contract with Razor U.S.A.

The Court is also satisfied that Defendant has purposefully availed itself of the American market. Defendant not only sought out and negotiated a licensing agreement with Razor U.S.A. to distribute its products throughout North America, including the United States, it essentially created Razor U.S.A. for this sole purpose. This arrangement constitutes "something more than mere awareness that the stream of commerce will sweep the product into the forum state." *Tobin v. Astra Pharm. Prod., Inc.,* 993 F.2d 528, 543 (6th Cir.1993) (quotation omitted). Instead, Defendant made a deliberate decision to market its products throughout the fifty states. *Id.* Defendant also made a deliber-

ate decision to register its marks with the United States Patent and Trademark Office.

Furthermore, Defendant's product is only available through Razor U.S.A., its exclusive distributor. *See id.* at 544. Defendant "cannot expect to rely solely on the use of an independent distributor to insulate it from suit." *Id.* Defendant did not simply place its product into the stream of commerce; it purposefully sought out and created a United States distributor to exploit the United States market. *Id.* As the Sixth Circuit has recognized in a situation analogous to this one, "[i]f we were to accept defendant's argument on this point, a foreign manufacturer could insulate itself from liability in each of the fifty states simply by using an independent national distributor to market its products, a result we specifically rejected." *Id.*

■ Last, the Court must determine if its exercise of jurisdiction is reasonable in this case. Reasonableness is evaluated in relation to several factors, including: "the burden on the defendant of litigating in the forum, the interest of the forum state, the plaintiff's interest in obtaining convenient and effective relief, and the shared interest of the several states in furthering fundamental substantive social policies." *Id.* at 545 (citing *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564–65, 62 L.Ed.2d 490 (1980)). Once the first two prongs of the three-part due process test have been satisfied, an inference arises that the third fairness requirement is also met. *Id.* at 544.

Defendant first asserts that the burden of litigating in this forum would be substantial because it would be forced to travel great distances and defend itself in a foreign tribunal. Defendant has already exhibited its familiarity with the United States's administrative and legal process

by filing a number of trademark registrations. Therefore, the Court finds Defendant's argument to be unpersuasive.

The Court also does not agree that forcing Defendant to appear in this Court would be contrary to international comity. This case involves the validity of United States Trademarks. The forum, *i.e.*, the United States, obviously has in interest in enforcing its statutes. Furthermore, the Court is not convinced that Plaintiff can seek the effective and convenient relief it seeks in Taiwan, as suggested by Defendant.

The Court is satisfied that an exercise of personal jurisdiction by this Court is reasonable and therefore, consistent with due process. Accordingly, the Court finds that its exercise of personal jurisdiction over Defendant is proper pursuant to Rule 4(k)(2) of the Federal Rules of Civil Procedure.

### Conclusion

For the reasons stated above, Defendant's motion to dismiss for lack of personal jurisdiction shall be denied.

An Order consistent with this Opinion shall issue forthwith.