**Glenn E. WILSON, Appellant,**

v.

**Daniel Lee CASE, Appellee.**

**No. 2001–SC–0085–DG.**

Supreme Court of Kentucky.

Sept. 26, 2002.

Fred E. Fischer III, Joseph Michael Kelly, Louisville, Counsel for Appellant.

Augustus S. Herbert, David Joseph Clement, Middleton & Reutlinger, Louisville, Counsel for Appellee.

GRAVES, Justice.

## I.

On December 16, 1997, Appellee, Daniel Lee Case, entered Kentucky for the first time to pick up a Piper Seneca II airplane for delivery to Multi–Air, Ltd. Appellant, Glenn E. Wilson, had agreed to sell the aircraft to Multi–Air, who intended to use it in Maryland and Virginia. Upon arrival in Kentucky, Case tendered a check from Multi–Air to Wilson, then took possession of the aircraft, and flew it out of Bowman Field in Louisville.

Case flew the plane directly to Clinton, Maryland, where he was unsuccessful in attempting to land the aircraft. Allegedly due to Case's negligence, the plane ran off the end of the runway, sustaining $41,349.11 in damage. Following the accident, and for reasons not specified, Multi–Air's check payment was returned and the sale of the aircraft fell through. Rather than enforce his contractual agreement, Wilson repossessed the plane and brought it back to Kentucky, where he eventually filed suit against Case.

Case is a resident of Maryland; Multi–Air, Ltd., is a Delaware corporation with its principal place of business in Virginia; and Wilson is a resident of Kentucky. Wilson had no contractual agreement with Case, and Case claims to have received no compensation from Multi–Air for picking up the aircraft. Case is employed by the government as a computer specialist in Rockville, Maryland, and has never engaged in nor derived income from any business dealings in Kentucky. He has no connections to Kentucky, other than his one-time, one-day visit from whence this conflict arises.

In December of 1998, Wilson filed suit in Jefferson Circuit Court claiming negligence. Case filed a motion to dismiss for lack of personal jurisdiction, which was granted by the trial court. The court held that Case did not purposefully avail himself of the privilege of acting in this jurisdiction, and "it offends notions of substantial justice and fair play for a defendant who has only entered this state once to be haled into court here."

Wilson appealed, and the Court of Appeals affirmed the trial court's decision. However, the Court of Appeals reasoned differently than the trial court. Applying the three-part test from *Tube Turns Div. Of Chemetron Corp. v. Patterson Co., Inc.*, Ky.App., 562 S.W.2d 99 (1978), a case commonly relied on for determining jurisdiction based on a single isolated activity, the court held that jurisdiction was not appropriate. The court reasoned that although Case had indeed purposefully availed himself of the privileges and protections of acting in Kentucky, the cause of action had not arisen from Case's activities in Ken-

tucky, and Case's contacts with Kentucky were not sufficient to reasonably justify personal jurisdiction over him. Wilson filed a Motion for Discretionary Review with this Court, which we granted.

## II.

Wilson argues that the lower courts erred in dismissing his complaint for lack of personal jurisdiction over the defendant. By virtue of this state's long-arm statute, Kentucky courts may assert personal jurisdiction over nonresident defendants if certain requirements are met. Although KRS 454.210(2)(a) enumerates many such prerequisites to jurisdiction, Wilson bases his argument only on the following long-arm provision: "A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's...[t]ransacting any business in this Commonwealth." In practice, the precise language of the statute and the application of its terms are much less important than the simple fact that the statute exists. Courts have determined that "the long-arm statute within this jurisdiction allows Kentucky courts to reach to the full constitutional limits of due process in entertaining jurisdiction over non-resident defendants." *Mohler v. Dorado Wings, Inc.*, Ky.App., 675 S.W.2d 404, 405 (1984); *Info–Med, Inc. v. Nat'l Healthcare, Inc.*, 669 F.Supp. 793 (W.D.Ky.1987). At the same time, the limits of due process serve as a safeguard to ensure that state courts comply with federal constitutional requirements. Therefore, Kentucky's jurisdictional reach cannot exceed those prescribed limits. *Texas Am. Bank v. Sayers*, Ky.App., 674 S.W.2d 36 (1984), *cert. denied*, 469 U.S. 1211, 105 S.Ct. 1180, 84 L.Ed.2d 328 (1985).

■ For our purposes here, "the traditional two step approach of testing jurisdiction against first statutory and then constitutional standards is therefore collapsed into the single inquiry of whether jurisdiction offends constitutional due process." *First Nat'l Bank of Louisville v. Bezema*, 569 F.Supp. 818, 819 (S.D.Ind. 1983) (referring to the Indiana long-arm statute which is similar to Kentucky's and has likewise been held to extend to the outer limits of due process). In light of the Due Process Clause and Supreme Court decisions establishing the parameters of *in personam* jurisdiction, and for the reasons discussed below, we must conclude that constitutional requirements have not been satisfied. As such, exercise of personal jurisdiction over Case would infringe on the 14th Amendment and is improper in this case.

In apparent answer to the many developments of transportation and mobility, as well as increased interstate commerce during the last half-century, the United States Supreme Court has shown the malleability of its personal jurisdiction doctrine. In the landmark case of *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), the Court departed from long-standing literal "presence" requirements and determined that a nonresident defendant can be subject to a judgment *in personam* if he has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" (*quoting Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)).

Though the Court refrained from defining "minimum contacts," it suggested several factors to consider in determining whether the minimum contacts requirement was met. Among those factors are the following: the quantity and quality of the activities; whether the activities of the defendant were continuous and systematic; whether the defendant availed himself of

the benefits and protections of the laws of the forum state; and whether the defendant's activities in the state gave rise to the cause of action. *International Shoe Co., supra.*

The Court later decided another important jurisdictional case, *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), basing its analysis on *International Shoe's* minimum contacts test. In *World–Wide Volkswagen,* the Court noted,

> The concept of minimum contacts...can be seen to perform two related, but distinguishable, functions. It protects the defendant against the burdens of litigating in a distant or inconvenient forum. And it acts to ensure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system.

444 U.S. at 291–292, 100 S.Ct. at 564.

The Court, acknowledging that the minimum contacts test was not dispositive of jurisdiction, proposed additional factors for courts to consider before exercising or refusing to exercise personal jurisdiction. These factors include the plaintiff's interest in obtaining relief, the state's interest in adjudicating the dispute, the burden of the litigation on an out-of-state defendant, and most importantly, the defendant's ability to foresee being haled into court in a given state.

These and other cases, while not establishing a hard and fast rule, provide a road map for judicial bodies, including Kentucky courts, trying to determine the reach of their personal jurisdiction. Although this Court has not yet applied the minimum contacts test in depth, the Kentucky Court of Appeals has done so on numerous occasions. Faced with the challenge of reconciling so many factors and considerations with the cases before it, the Court of Appeals in *Tube Turns Div. of Chemetron Corp. v. Patterson Co., Inc., supra,* adopted the three-part test established previously by the Sixth Circuit in *Southern Machine Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir.1968). This test synthesized the relevant factors set forth by *International Shoe* and its progeny into a more succinct and workable three-pronged analysis to determine the outer limits of personal jurisdiction based upon a single act. Since *Tube Turns,* Kentucky courts have successfully applied the same jurisdictional test. *See Tennessee Farmers Mutual Ins. Co. v. Harris,* Ky.App., 833 S.W.2d 850 (1992); *Pierce v. Serafin,* Ky.App., 787 S.W.2d 705 (1990); *Mohler v. Dorado Wings, Inc., supra.*

■ The first prong of the test asks whether the defendant purposefully availed himself of the privilege of acting within the forum state or causing a consequence in the forum state. The second prong considers whether the cause of action arises from the alleged in-state activities. The final prong requires such connections to the state as to make jurisdiction reasonable. *Tube Turns, supra,* at 100. Each of these three criteria represents a separate requirement, and jurisdiction will lie only where all three are satisfied. *LAK, Inc. v. Deer Creek Enterprises,* 885 F.2d 1293, 1303 (6th Cir. 1989). Employing this analysis against the *International Shoe* backdrop of "fair play and substantial justice," courts in Kentucky have been able to assert or decline jurisdiction in keeping with due process safeguards. We believe the test described above to be appropriate and well-designed to further the goals of the 14th Amendment. As such, we shall endeavor to apply it to the facts of the present case.

## A.

■ As to the first prong of the test, the trial court and Court of Appeals disagreed on whether Case purposefully availed himself of the privilege of acting under the laws of Kentucky. The trial court found that Case had acted under the direction of Multi–Air, not of his own accord. Thus, his presence in Kentucky was "random" and "attenuated," merely incidental to his assignment; it was not purposeful. The Court of Appeals held otherwise, reasoning that even though Case never invoked the laws of Kentucky to protect him, they were there for his asking and would have been available had recourse been necessary. We concur with the trial court and find that Case did not purposefully avail himself of the laws of Kentucky.

Case's sole purpose in Kentucky was to receive an airplane for delivery to Multi–Air in Maryland. As Case had no contract with Wilson, he had no interest to be protected. Only Multi–Air, not Case, could have sued for breach of contract. If Wilson had refused to give Case the keys to the airplane, Case would have had no means whereby to compel delivery of the same. Had Wilson taken the check from Case and refused to deliver the plane, Case would have been unable to recover the money as it was not his. We may say that Case enjoyed a very general protection from personal harm while in Kentucky, but given that Wilson argues for jurisdiction based on a specific business transaction, such protections are only tangentially related and not grounds for jurisdiction.

In *LAK, Inc. v. Deer Creek Enterprises, supra,* the Sixth Circuit elaborated on the meaning of purposeful availment: "Even in a case where the cause of action arose in the plaintiff's home state, that state may not exercise *in personam* jurisdiction if the defendant has not purposefully entered into a connection with it (such that he should reasonably anticipate being haled into court there)." 885 F.2d at 1300 (quoting *World–Wide Volkswagen v. Woodson, supra,* 444 U.S. at 297, 100 S.Ct. at 567.) The Supreme Court has stated, "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random', 'fortuitous' or 'attenuated' contacts." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (citations omitted).

In reality, probably very few individuals actually consider beforehand the liabilities that may arise from their activities in a foreign state, especially when their activities are non-economic. In this case, even if Case had entertained the various scenarios that might subject him to a lawsuit, he should never have anticipated being haled into a Kentucky court. As far as Case knew, he was tendering payment for an aircraft already promised to Multi–Air, Inc. Upon delivery of the check, Case could only assume that the aircraft then became the property of Multi–Air. As far as Case was concerned, he would have to answer only to Multi–Air in the event of damage to the aircraft. Although Case might have supposed he could be held liable in Kentucky for an airplane accident at the airport or in Kentucky airspace, any such fear would have disappeared once he crossed the border into another state. Furthermore, it was certainly not foreseeable that Multi–Air would default on its payment to Wilson. It was even less foreseeable that Case should be required to travel to Kentucky to redress injuries to Wilson stemming from Multi–Air's inability to meet its financial obligations. The trial court correctly held that Case did not purposefully avail himself of the protections of Kentucky law. His activities in Kentucky were short-lived, random and

merely incidental to his delivery assignment, and do not warrant the exercise of jurisdiction.

### B.

■ The second prong of the *Tube Turns* minimum contacts analysis requires the court to decide whether the cause of action arises from the defendant's activities in the state. 562 S.W.2d at 100. Wilson maintains that the accident arose from Case's activities in Kentucky, since he took off from a Louisville airport and the alleged negligence would likely have occurred before he physically touched down in Maryland.

In support of his argument, Wilson looks to *Mohler v. Dorado Wings, Inc., supra,* wherein the Court of Appeals asserted jurisdiction over a foreign airline who flew only between Puerto Rico and the Virgin Islands. Finding that the nonresident airline regularly did business with airlines based in Kentucky, the court held that "if a defendant is transacting business within the Commonwealth, it is not necessary that a tort be committed herein." 675 S.W.2d at 407. The obvious difference between *Mohler* and the case before us is that the airline there repeatedly and systematically did business with Kentucky companies and consumers. Here, there is no such regular business or organized system of transaction. Case's only in-state activities were handing the check to Wilson, getting into the airplane, and taking off from the airport. The alleged negligence, without which there would be no controversy, did not take place in or over Kentucky.

Wilson's argument that negligence taking place in Maryland airspace arose out of Case's activities in Kentucky presents too many problems to adopt. Rather than venture out onto the slippery slope of determining at what point interstate activities cease to relate back to their point of origin, we believe it wise to let common sense govern. It seems very unlikely that Case's activities in Kentucky could have had anything to do with the accident suffered in Maryland. The lower courts therefore correctly held that the alleged negligent behavior in Maryland did not arise from Case's activities in Kentucky.

### C.

■ The final prong of the analysis looks at a defendant's overall contacts with the state, considering whether those connections make jurisdiction over the nonresident defendant reasonable. *Tube Turns, supra,* at 100. We believe the very limited connection between Case and the Commonwealth of Kentucky precludes the exercise of personal jurisdiction under the 14th Amendment. We are persuaded by the decision of the court in *First Nat'l Bank of Louisville v. Bezema, supra,* wherein a Massachusetts resident signed a contract in Indiana for the purchase of an airplane and flew the plane out of Indiana. When the defendant from Massachusetts defaulted on his payment, the plaintiff filed suit in Indiana. The defendant had no prior or subsequent contacts with Indiana, and the court found that it could not exercise jurisdiction over him.

Here, Case has an even more attenuated connection with the forum state than did the defendant in *Bezema.* Whereas Bezema was a party to the contract made in Indiana, and his suit arose out of that contract, neither is true of Case. Case was not a party to the contract for the sale of the aircraft, he received no proprietary benefit from the contract, and the suit brought by Wilson has nothing to do with the contract made in Kentucky. Like Bezema, Case had no contacts with Kentucky prior to his entry for pickup of the airplane, nor has he had any contacts

since. Under these circumstances, it would be unreasonable for a court in Kentucky to exercise jurisdiction over Case.

In support of its decision, the *Bezema* court looked to public policy, explaining that a contrary holding could adversely affect the economy "if every tourist, transient or casual consumer making a credit purchase in Indiana could be haled back into the courts of this state on a complaint by the seller." 569 F.Supp. at 820. The court continued, "Any short term benefit to the seller gauged by the convenience of suing in Indiana would be vastly outweighed by the deleterious effects of a policy that ultimately deters consumer credit sales." *Id.* We believe Kentucky would likewise be harmed by such a policy.

Viewing Case's contacts with Kentucky collectively, we maintain that jurisdiction over him would be unreasonable and inconsistent with due process goals. Thus, we conclude that Case did not purposefully avail himself of the laws and protections of the Commonwealth of Kentucky, that the cause of action brought by Wilson did not arise out of Case's in-state activities, and that Case's overall connection to Kentucky was and is insufficient to reasonably justify jurisdiction over him.

## III.

We acknowledge, of course, that no one test is dispositive of minimum contacts. The Court in *Kulko v. Super. Ct. of Cal. In and For City and County of San Francisco*, 436 U.S. 84, 92, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132 (1978), indicated as much, noting, "Like any standard that requires a determination of 'reasonableness', the 'minimum contacts' test of *International Shoe* is not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present." (*quoting Hanson v. Denckla*, 357

U.S. 235, 246, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). Decades later, this point was reiterated by the Court: "We . . . reject any talismanic jurisdictional formulas; 'the facts of each case must [always] be weighed' in determining whether personal jurisdiction would comport with 'fair play and substantial justice.' " *Burger King v. Rudzewicz, supra,* at 485–486; 105 S.Ct. at 2189 (quoting *Kulko, supra* ). As such, we feel it would be prudent to discuss several additional factors supporting our decision here.

■ *World–Wide Volkswagen, supra,* encourages courts to assess the plaintiff's interest in obtaining relief and the state's interest in adjudicating the dispute, and to balance those interests against the burden imposed on the defendant having to litigate in the foreign forum state. In this case, Wilson's interest is compelling, but our refusal to assert jurisdiction does not preclude his recovery in a Maryland court for the alleged harms caused by Case. Kentucky may have an interest in redressing wrongs to its citizens, but a single damaged airplane is not a sufficient state interest for jurisdictional purposes. Maryland, on the other hand, may have more of an interest in adjudicating the dispute as the accident took place there. The outcome of a trial in Maryland may have an effect on its air-traffic control practices, runway construction, emergency rescue procedure, pilot licensing requirements, and so on.

As to the burden on Case in defending a lawsuit in Kentucky, we are again convinced by the reasoning employed in *Bezema, supra*. The court there found that the hardship that would have been imposed on Bezema was too great to qualify as fair play. Importantly, the court acknowledged a difference between the corporate defendants in cases like *International Shoe* and *World–Wide Volkswagen,*

and individual consumer defendants like Bezema. It concluded that independent consumers do not have the same resources available as corporations for defense of a suit in a foreign state. For these consumers, the relative inconvenience of defending a suit far from home is often much greater than for corporations. *Bezema, supra,* at 820–821. We agree.

Here, Case does not even reach the level of the individual consumer, as he did not buy the airplane. Still, the point is well taken and applies here. Case is a government employee with no business connections to Kentucky. The financial strain and time commitment required to defend a lawsuit in Kentucky would constitute an extreme burden on Case, one which this Court is not willing to impose. We do not propose that non-corporate, nonresident defendants can never be haled into Kentucky courts. Rather, we find on the facts of this case that assertion of jurisdiction would offend the guarantees of fairness and justice extended by the Constitution.

#### IV.

We are aware that the many factors discussed above are merely small pieces of a much larger determination. However, when taken together, they form a lucid and conclusive answer to the jurisdictional question facing this Court. In light of the paucity of connections between Case and Kentucky, we hold that Case did not have such minimum contacts with the Commonwealth as to warrant the exercise of jurisdiction over him. Having determined that minimum contacts were not met, we further consider, as the *International Shoe* Court did, whether the exercise of jurisdiction over Case would nonetheless comport with "traditional notions of fair play and substantial justice." 326 U.S. at 316, 66 S.Ct. at 158. This question we can answer more succinctly.

The doctrine of *in personam* jurisdiction was historically based on dominion over the defendant's person, and until relatively recently required physical presence or voluntary appearance by the defendant in the forum exercising that jurisdiction. In *International Shoe* and cases subsequent, we have witnessed a departure from the rigid rules of the past, but there still are and must be limits on states' exercise of jurisdiction over nonresident defendants. To assert jurisdiction here would be to ignore the boundaries established by the Constitution. We cannot hold that due process permits arbitrary assertion of power to bind nonresident defendants with little or no connection to the forum state. As such, jurisdiction in this case would offend the ideals of fair play and substantial justice and cannot stand under the 14th Amendment. For these reasons, we affirm the Court of Appeals and the trial court in dismissing the complaint.

COOPER, GRAVES, JOHNSTONE, KELLER, and WINTERSHEIMER, J.J. concur.

LAMBERT, C.J., dissents in a separate opinion in which STUMBO, J., joins.

LAMBERT, Chief Justice, Dissenting.

I respectfully dissent and would reverse the Court of Appeals on the view that KRS 452.210(2)(a)(1) affords an adequate basis for exercising jurisdiction over Appellee in this matter.

Appellant asserts that the Court has personal jurisdiction over Appellee pursuant to Kentucky's Long–Arm Statute. KRS 454.210(2)(a)(1) states, "A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's . . . . transacting any business in this Commonwealth." This statute "permits the courts to reach the full constitutional limits of due

process in entertaining jurisdiction over non-resident defendants."[1]

To exercise personal jurisdiction over a non-resident defendant pursuant to KRS 454.210(2)(a)(1), three questions must be addressed. The first is whether the Appellee's conduct constituted transacting "any business" in this Commonwealth. The second question is whether the cause of action for negligence arises from Appellee transacting business within the Commonwealth. The third question is whether entertaining jurisdiction would be permitted by the due process clause of the Fifth and Fourteenth Amendments to the United States Constitution. Upon an affirmative answer to these three questions, jurisdiction over Appellee should be established.

Appellee's conduct constituted transacting business within the meaning of KRS 454.210(2)(a)(1). Appellee agreed to take possession of an airplane in Kentucky and deliver it to Maryland on behalf of Multi–Air, Ltd. Whatever the formal relationship between Multi–Air and Appellee, Appellee undoubtedly acted as an agent for Multi–Air. Appellee's business purpose was to acquire possession of the Piper Seneca II airplane at Bowman Field in Louisville and take the plane to Clinton, Maryland, but before possession could be gained, Appellee had to deliver a check to Appellant for the purchase price. The check was delivered in Louisville.

The plain meaning of KRS 454.210(2)(a)(1) is to authorize the exercise of personal jurisdiction over a person conducting any business in Kentucky. The plain meaning of the term "any business" encompasses Appellee's tender of payment for the airplane. The tender of payment for goods or services is logically and traditionally a business activity. Appellee's action clearly falls within the purview of the language of KRS 454.210(2)(a)(1) granting jurisdiction over a person who transacts any business within the Commonwealth.

Appellee's transaction of business within the Commonwealth gave rise to Appellant's negligence cause of action. It is proper to exercise jurisdiction over a tort claim occurring in another jurisdiction that arises out of business transacted in Kentucky.[2] In *Mohler v. Dorado Wings, Inc.,* the business agreement for plane tickets was entered into in Kentucky, but gave rise to a tort cause of action for compensatory and punitive damages from the loss of jewelry between Puerto Rico and the Virgin Islands.[3] In *Mohler,* the Court of Appeals stated, "If a defendant is transacting business within the Commonwealth, it is not necessary that a tort be committed herein."[4]

In the present case, Appellee tendered a check for payment for an airplane in Kentucky and proceeded to fly the plane to Maryland where he negligently crashed it. The business transacted in Kentucky, delivering the check and taking possession of the plane, was a condition precedent and *sine qua non* to the negligent plane crash in Maryland.

Due process of law permits the exercise of jurisdiction when a party establishes minimum contacts with the Commonwealth so that the exercise of jurisdiction would not offend "traditional notions of fair play and substantial justice."[5] Appellee's trip

---

**1.** *Davis–Johnson v. Parmelee,* Ky.App., 18 S.W.3d 347, 352 (1999).

**2.** *Mohler v. Dorado Wings, Inc.,* Ky. Ct.App., 675 S.W.2d 404, 407 (1984).

**3.** *Id.*

**4.** *Id.*

**5.** *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (citations omitted).

to Kentucky was sufficient contact to render the exercise of jurisdiction reasonable. Although the duration of Appellee's stay was short, his conduct was such that requiring him to defend litigation in Kentucky would not offend due process.

For the forgoing reasons I dissent.

STUMBO, J., joins this dissenting opinion.