**Christopher Todd POWERS, Appellant,**

v.

**Kee Bum PARK, M.D., and Cape Neurological Surgeons, P.C., Appellees.**

**No. 2005–CA–000707–MR.**

Court of Appeals of Kentucky.

April 14, 2006.

William R. Kenealy, Eric J. Jacobi, Clay Kenealy Wagner & Adams, PLLC, Louisville, KY, for Appellant.

Andrew N. Clooney, O'Bryan, Brown & Toner, PLLC, Louisville, KY, for Appellee.

Before GUIDUGLI and JOHNSON, Judges; HUDDLESTON, Senior Judge.[1]

1. Senior Judge Joseph R. Huddleston sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

## OPINION

HUDDLESTON, Senior Judge.

Christopher Todd Powers appeals from a McCracken Circuit Court summary judgment that dismissed his malpractice complaint against Kee Bum Park, M.D., and Cape Neurological Surgeons, P.C. The judgment was based upon the circuit court's determination that Dr. Park, a resident of Missouri, and Cape Neurological Surgeons, P.C., a Missouri corporation, were not subject to personal jurisdiction in Kentucky for treatment rendered in Missouri to Powers, a Kentucky resident.

On September 2, 2002, Powers injured his back while working as a distribution manager for Coca–Cola Enterprises Incorporated. He was treated by physicians in Kentucky, but his employer's workers' compensation insurance carrier, Constitution State Services, sent him to Missouri for an evaluation by Dr. Park. Dr. Park is the president of Cape Neurological Surgeons, P.C., a Missouri corporation. Dr. Park examined Powers at his office on April 14, 2003, and agreed with the recommendation of his treating physician in Kentucky, Dr. Sean McDonald, that Powers needed surgery. The record indicates that Park received a check for $800.00 from the insurance company as payment for this consultation. The surgery was performed in Kentucky by Dr. McDonald. Dr. Park saw Powers again in his Missouri office on July 7, 2003, when he recommended that Powers return to work on light duty after completing four weeks of physical therapy. Dr. Park received a check for $53.44 from the insurance carrier for this visit. Powers returned to work, but the pain in his back increased. In September 2003, Constitution State Ser-

vices forwarded Powers' lumbar myelogram and post myelogram CT studies to Dr. Park for review and interpretation. There is no record of payment for this service. Although it is not clear from the record, Powers asserts in his brief that at some point Dr. Park opined that further surgery was not indicated. Powers eventually did undergo another operation. He was also terminated from his employment with Coca–Cola Enterprises.

On July 8, 2004, Powers filed suit in McCracken Circuit Court against several defendants, including Dr. Park and Cape Neurological Surgeons, P.C., alleging that Dr. Park had deviated from the applicable standard of care in examining Powers and had thereby caused permanent and serious injuries as a result of a delay in surgical treatment. Dr. Park and Cape moved for summary judgment, based on lack of personal jurisdiction. After conducting a hearing on the motion on February 18, 2005, the circuit court granted the motion, and this appeal followed.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2] The circuit court must view the record "in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor."[3] On appeal, the standard of review is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to

---

**2.** Ky. R. Civ. Proc. (CR) 56.03.

**3.** *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.,* 807 S.W.2d 476, 480 (Ky.1991) (citations omitted).

judgment as a matter of law." [4]

The relevant portion of the Commonwealth's long-arm statute, Kentucky Revised Statutes (KRS) 454.210, provides as follows:

(2)(a) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:

1. Transacting any business in this Commonwealth;

2. Contracting to supply services or goods in this Commonwealth;

3. Causing tortious injury by an act or omission in this Commonwealth;

4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth[.]

(b) When jurisdiction over a person is based solely upon this section, only a claim arising from acts enumerated in this section may be asserted against him.

■ "Kentucky has elected to assume personal jurisdiction over a nonresident tort-feasor whose activities outside the state result in injury in this state only if that tort-feasor regularly does or solicits business within the state or has other substantial connection to the Commonwealth." [5]

■ Kentucky's long-arm statute has been consistently interpreted as reaching the full limits of constitutional due process.[6] Kentucky has adopted a three-pronged test to determine whether the exercise of personal jurisdiction over a defendant violates due process.[7] The first prong of the test asks whether the defendant purposefully availed himself of the privilege of acting within the forum state or causing a consequence in the forum state. The second prong considers whether the cause of action arises from the alleged in-state activities. The final prong requires such connections to the state as to make jurisdiction reasonable.[8] "Each of these three criteria represents a separate requirement, and jurisdiction will lie only where all three are satisfied." [9]

■ Powers argues that Dr. Park's conduct has subjected him to the jurisdiction of Kentucky's courts because his medical opinions were directed at Kentucky with the intent to control the course of Powers' treatment in Kentucky. Dr. Park accepted the referral of business from Kentucky and was compensated for his work. Powers contends in his appellate brief that it was, therefore, foreseeable that Dr. Park would be "haled into Kentucky courts for lawsuits relating to his medical services directed at Kentucky."

4. *Scifres v. Kraft,* 916 S.W.2d 779, 781 (Ky. App.1996).

5. *Pierce v. Serafin,* 787 S.W.2d 705, 707 (Ky. App.1990).

6. *See Wilson v. Case,* 85 S.W.3d 589, 592 (Ky.2002).

7. *See id.* at 593.

8. *Id., citing Tube Turns Div. of Chemetron Corp. v. Patterson Co., Inc.,* 562 S.W.2d 99, 100 (Ky.App.1978).

9. *Id., citing LAK, Inc. v. Deer Creek Enterprises,* 885 F.2d 1293, 1303 (6th Cir.1989).

Powers further asserts that he is not required to prove that Dr. Park and Cape "regularly" solicited or conducted business in Kentucky. He implies that this test is relevant only to the exercise of general jurisdiction. He insists that Kentucky may exercise specific jurisdiction over Dr. Park and Cape; and that he need only show that his claim arises out of or relates to the defendants' contact, even a single act by the defendants, with the forum state.

 In order for the court to exercise specific jurisdiction on the basis of a single act, that act must take place within the Commonwealth. If the act occurred outside the Commonwealth and then caused consequences within the Commonwealth, more is required if the exercise of jurisdiction is to comport with due process. As Powers himself acknowledges, the cause of action must arise from the defendants' activities in the forum state.[10]

 Dr. Park and Cape did not conduct any business activities in Kentucky; they did not advertise in Kentucky; nor did they solicit business in Kentucky. There is no evidence that the alleged "tortious injury occurring in this Commonwealth [to Powers] arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth."[11] The regular solicitation or conduct of business in Kentucky is not exclusively a requirement for the exercise of general jurisdiction; it is also necessary when the act that caused the alleged tortious injury did not occur in Kentucky.

This distinction has been elucidated in *Pierce v. Serafin.*[12] In that case, Marilynn Pierce was contemplating filing suit against her treating physician for malpractice. Her attorney referred her to Dr. Donald Serafin, a North Carolina physician, for an evaluation of her medical condition for purposes of the malpractice suit. Dr. Serafin nonetheless released a photocopy of his evaluation notes to Pierce's physician. Pierce filed suit against Dr. Serafin for invasion of privacy. This Court upheld the dismissal of the action on the ground that there was insufficient contact with Kentucky to exercise personal jurisdiction over Dr. Serafin. The defendant's conduct (the mailing of the letter to Pierce's physician) caused a "consequence" in Kentucky, much as Dr. Parks' medical opinions caused a "consequence" in Kentucky relating to Powers' medical treatment. The *Pierce* court acknowledged that the consequence (Pierce's Kentucky physician learning that she had consulted another physician regarding his alleged malpractice) had a "substantial enough connection with the forum state to make the exercise of jurisdiction reasonable."[13] But the Court went on to caution that "[i]t is with the second portion of the test that appellant's difficulty arises in that it requires that the cause of action must arise from defendant's activities [in Kentucky]."[14] Like Dr. Serafin, Dr. Park has simply not acted in the Commonwealth of Kentucky. Dr. Park may have committed an act that had a consequence in Kentucky, but he did not commit that act in Kentucky. Neither did he or Cape have sufficient minimum contacts (as described in KRS 454.210(2)(a)(4)) such as the regu-

10. *See Southern Machine Co. v. Mohasco Industries Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

11. Ky.Rev.Stat. (KRS) 454.210(2)(a)(4).

12. *Supra,* note 5.

13. *Id.* at 706.

14. *Id.*

lar conduct or solicitation of business in Kentucky, to justify the exercise by the courts of this Commonwealth of personal jurisdiction over him.

Powers relies on several cases from other jurisdictions to support his argument.[15] Whether personal jurisdiction may be exercised over a defendant is a fact-specific determination, and "[e]ach case involving the issue of personal jurisdiction over a nonresident defendant must be decided on its own facts."[16] Although these other cases are instructive, we conclude that under the facts of this case, personal jurisdiction may not be exercised by Kentucky courts over Dr. Park and Cape Neurological Surgeons, P.C.

■ Powers also argues that summary judgment was granted prematurely because he was not afforded the opportunity to conduct discovery to ascertain the full extent of Dr. Park and Cape's contacts with Kentucky. As the appellees have pointed out, however, no requests for discovery were filed by Powers, although there was ample time for him to do so, nor has Powers provided any explanation for his failure to file discovery requests.

For the foregoing reasons, the summary judgment from which this appeal is prosecuted is affirmed.

ALL CONCUR.

---

**15.** *See Kennedy v. Freeman,* 919 F.2d 126 (10th Cir.1990); *McGee v. Riekhof,* 442 F.Supp. 1276 (D.Mont.1978); *Gonzales v. Chandel,* 13 F.Supp.2d 1197 (D.Kan.1998).

**16.** *American Greetings Corp. v. Cohn,* 839 F.2d 1164, 1169 (6th Cir.1988).