The **SPORTS AUTHORITY MICHIGAN, INC.**,
Plaintiff,

v.

**JUSTBALLS, INC., et. al., Defendants.**

No. 99–CV–75910–DT.

United States District Court,
E.D. Michigan,
Southern Division.

May 30, 2000.

Kenneth J. McIntyre, Glenn E. Forbis, Kristin L. Murphy, Rader, Fishman & Grauer, PLLC, Bloomfield Hills, MI, for plaintiff.

Kenneth J. McIntyre, Dickinson Wright PLLC, Detroit, MI, of counsel William J. Lehane, Kelly A. Beaudin, Driker Biddle & Reath LLP, Philadelphia, PA, for defendants.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

WOODS, District Judge.

This matter having come before the Court on Defendant's motion to dismiss for lack of personal jurisdiction [Document No. 3];

The Court having reviewed the pleadings submitted herein, and being otherwise fully informed in the matter;

IT IS HEREBY ORDERED that Defendant's motion to dismiss for lack of

personal jurisdiction pursuant to Fed. R.Civ.P. 12(b)(2) shall be, and hereby is, DENIED.

## I. BACKGROUND

Plaintiff, The Sports Authority Michigan, Incorporated ("Sports Authority" or "Plaintiff"), brought this action against Defendant Justballs.com, Incorporated ("Justballs" or "Defendant"),[1] alleging: (1) infringement of its federally registered marks under 15 U.S.C. § 1114; (2) unfair competition under 15 U.S.C. § 1125(a); (3) dilution under 15 U.S.C. § 1125(c); (4) unjust enrichment under Michigan common law; (5) dilution under Michigan common law and (6) violation of the Michigan Consumer Protection Act, MICH.COMP.LAWS § 445.901.

Justballs is a Delaware corporation having its principal place of business in Kingston, New Jersey. Sports Authority represents, and Justballs does not deny, that it is a national retailer of sporting goods and equipment. It operates primarily via a web site on the internet. Sports Authority is a retail sporting goods retailer which distributes, promotes and sells "sporting goods and related items, including all types of balls, ball games and toys relating to sports, fitness and recreation." Complt. at ¶ 8. Sports Authority sells its goods at its retail stores and on the internet. *Id.* at ¶¶ 7–8. Sports Authority owns forty federally registered service marks featuring the word "Authority," and has thirteen pending applications. *See* Complt. at ¶ 12 & Ex. A.

## II. STANDARD OF REVIEW

When a defendant challenges personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2), the plaintiff bears the burden of establishing the existence of personal jurisdiction. *See International Tech. Consultants, Inc. v. Euroglas S.A.,* 107 F.3d 386,

391 (6th Cir.1997). In the instant matter, because the Court did not conduct an evidentiary hearing on the matter of personal jurisdiction, Plaintiff must make only a prima facie showing, and the Court views the evidence in the light most favorable to Plaintiff. *See Dean v. Motel 6 Operating L.P.,* 134 F.3d 1269, 1272 (6th Cir.1998); *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1262 (6th Cir.1996). The Court notes that "in the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir.1991). The Court does not, however, consider facts proffered by the defendant that conflict with those offered by the plaintiff. *See id.* at 1459.

## III. ANALYSIS

Plaintiff invokes the Court's subject matter jurisdiction under the Lanham Act, 15 U.S.C. § 1121. *See* Complt. at ¶ 6. Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), does not, however, provide for nationwide service of process on a defendant or otherwise address this Court's personal jurisdiction over Lanham Act defendants. Nor does any other applicable provision of the Lanham Act. Accordingly, the Court must analyze the personal jurisdiction issue presented by Defendant under Fed.R.Civ.P. 4(k), which provides:

(1) Service of summons or filing a waiver of service is effective to establish jurisdiction over the person of a defendant

(A) who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located. . . .

Fed.R.Civ.P. 4(k)(1)(A). *Accord, Janmark, Inc. v. Reidy,* 132 F.3d 1200, 1201 (7th Cir.1997). Therefore, in the present

---

1. Although Plaintiff designated three Defendants, Defendant Justballs.com, Inc. represents that one entity, "Justballs, Inc.," is the former name of Justballs.com, Inc., and the other entity, "Justballs," does not exist. For clarity and accuracy, the Court will refer to Defendant in the singular.

action, the Court is limited in its exercise of personal jurisdiction by constitutional principles of Due Process and the specific requirements of·Michigan's long-arm statute.

■ Personal jurisdiction can be invoked either via general jurisdiction, where the defendant has "continuous and systematic" contact with the forum state, *see Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 445–47, 72 S.Ct. 413, 96 L.Ed. 485 (1952), or via limited jurisdiction, where the subject matter of the lawsuit is related to the defendant's contacts with the forum state. *See Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir.1996).

■ In Michigan, courts have general jurisdiction over a corporation when it incorporates under Michigan laws, consents to be sued in Michigan, or carries on a "continuous and systematic part of its general business within the state." MICH. COMP.LAWS § 600.711. Although Justballs maintains that it does not have the substantial contacts with Michigan required for general jurisdiction and Sports Authority would disagree with this point, both parties opt to focus solely on whether Sports Authority can establish grounds for asserting limited jurisdiction.

■ As Michigan courts have repeatedly stressed, "[f]or limited personal jurisdiction to attach, the cause of action must arise from the circumstances creating the jurisdictional relationship between the defendant and the foreign state." *Rainsberger v. McFadden*, 174 Mich.App. 660, 662, 436 N.W.2d 412 (Mich.Ct.App. 1989) (citation omitted). A corporation is subject to the limited jurisdiction of the courts of Michigan if any of five designated relationships exist between the corporation and the state. *See* MICH.COMP.LAWS § 600.715.

■ The Michigan Supreme Court has construed Michigan's long-arm statute to bestow the broadest possible grant of personal jurisdiction consistent with due pro-

cess. *See Sifers v. Horen*, 385 Mich. 195, 198–99, 188 N.W.2d 623 (Mich.1971). The determination of whether jurisdiction attaches under the Michigan long-arm statute thus requires a two-step analysis:

> First, whether the exercise of limited personal jurisdiction violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution. If not, then whether the rules of statutory construction support such an exercise of jurisdiction over defendants.

*Walter v. M. Walter & Co., Inc.*, 179 Mich. App. 409, 412, 446 N.W.2d 507 (Mich.Ct. App.1989) (citations omitted) (per curiam). Under Michigan's long-arm statute, the state's jurisdiction extends to the limits imposed by federal constitutional Due Process requirements, and thus, the two questions become one. *See Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992) (citation omitted); *Green v. Wilson*, 455 Mich. 342, 349–50, 565 N.W.2d 813 (Mich.1997).

■■ In order to comply with the Due Process Clause, the plaintiff must establish that significant minimum contacts exist sufficient to satisfy "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (citation omitted). Drawing on the teachings of *International Shoe*, the Sixth Circuit has set forth three criteria that must be met before a court will exercise personal jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Kerry Steel, Inc. v. Paragon Indus., Inc.,* 106 F.3d 147, 150 (6th Cir.1997) (quoting *Southern Mach. Co. v. Mohasco Indus.,* 401 F.2d 374, 381 (6th Cir.1968)). *Accord, Rainsberger,* 174 Mich.App. at 663, 436 N.W.2d 412 (citations omitted). A showing of the first criterion—that the defendant purposefully availed itself of the privilege of transacting business in the forum state or causing a consequence in the forum state—is essential. *See LAK, Inc. v. Deer Creek Enter.,* 885 F.2d 1293, 1300 (6th Cir.1989) (citations omitted).

The next part of the Due Process inquiry involves whether the plaintiff's cause of action arose from the defendant's activities in the forum state. *See Jeffrey v. Rapid Am. Corp.,* 448 Mich. 178, 186, 529 N.W.2d 644 (Mich.1995). Finally, due process also requires that the exercise of personal jurisdiction be reasonable.[2] Reasonableness is a function of numerous factors, including:

> ... the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quotations omitted).

### 1. Purposeful Availment

Under the first prong of the Due Process inquiry, the Court must determine whether Defendant purposefully availed it-self of the privilege of conducting business or causing consequences in Michigan. The Supreme Court expressed that the " 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *Keeton v. Hustler Magazine,* 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984), and *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 299, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).[3] The key to this inquiry is whether the defendant reached out beyond its state to create a continuous and systematic relationship with citizens of another state. *See Burger King,* 471 U.S. at 473, 105 S.Ct. 2174. " '[P]urposeful availment' is something akin either to a deliberate undertaking to do or cause an act or thing to be done in Michigan or conduct which can be properly regarded as a prime generating cause of the effects resulting in Michigan, something more than a passive availment of Michigan opportunities. The defendant will have reason to foresee being 'haled before' a Michigan court." *Jeffrey,* 448 Mich. at 187, 529 N.W.2d 644 (quotation omitted).

In the present action, Plaintiff relies upon three "categories" of conduct that it believes satisfies the purposeful availment inquiry: 1) assorted advertising efforts online, in print publications and at trade shows; 2) sales to Michigan entities; and 3) Defendant's operation of its retail internet web site.

■ Sports Authority generally alleges that Justballs advertises in national publi-

---

**2.** Where the defendant has directed its actions at the forum and the plaintiff's claim arises out of those actions, the defendant must show a compelling reason why jurisdiction is unreasonable. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477, 105 S.Ct. 2174 (1985).

**3.** "By requiring that individuals have 'fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign,' the Due Process Clause 'gives a degree of predictability to the legal system that al-lows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.' " *Burger King,* at 472, 105 S.Ct. 2174 (internal citations omitted). The fair warning requirement is satisfied if the defendant has " 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Id.* (internal citations omitted).

cations, primarily on-line, but also in some print magazines, in an attempt to solicit business in Michigan. *See* Plf.'s Br. at 4 & Ex. 10. Sports Authority argues that these actions establish that Justballs has purposefully availed itself of the privilege of acting in Michigan or causing a consequence in Michigan and thus has a reason to foresee being haled into a Michigan court. The Court is not satisfied that the mere placement of advertisements in nationally distributed on-line and print publications "rise[s] to the level of purposeful contact with a forum required by the Constitution in order to exercise personal jurisdiction over the advertiser." *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1305 (10th Cir.1994). *Accord, Witbeck v. Bill Cody's Ranch Inn*, 428 Mich. 659, 672–74, 411 N.W.2d 439 (Mich.1987).

Sports Authority also argues, in a conclusory fashion, that Justballs "actively sells and promotes its products at trade shows across the country," Plf.'s Br. at 4 & Ex. 6, but fails to indicate whether any of these trade shows were held in Michigan. Michigan case law suggests that a business transaction, conducted as a result of information gathered at a show held in another state is insufficient to constitute purposeful availment. *See Gooley v. Jefferson Beach Marina, Inc.*, 177 Mich.App. 26, 29–32, 441 N.W.2d 21 (1989).[4]

■ Sports Authority alternatively argues that Justballs has sold its products to Michigan residents and these transactions form the basis for concluding that Justballs availed itself of the benefits and protections of Michigan law. In the materials submitted to this Court, Justballs neither confirms nor denies whether it has sold goods to Michigan citizens. Sports Au-

thority submits a February 29, 2000, E–Commerce Times interview with Justballs' president, Jim Medalia ("Medalia"), in which Medalia states that "we have sold to all 50 states and over 30 countries worldwide." Plf.'s Ex. 6 at p. 4. Medalia made a similar claim in an earlier March 1, 1999, interview with Internet World. *See* Plf.'s Ex. 7 at 2. Sports Authority additionally submits that Justballs sells sports memorabilia with the logos of Michigan athletic teams, such as the Detroit Lions, the Detroit Tigers and University of Michigan. *See* Plf.'s Ex. 8. Construing the facts in a light most favorable to Sports Authority as the nonmoving party, this Court must accept the allegations, or the reasonable inferences that can be drawn therefrom: Justballs has sold its products to Michigan citizens and targets their business by offering goods that may appeal directly to Michigan citizens. This Court therefore agrees that these contacts constitute personal availment.

The Court's finding on this first criterion is further buttressed in light of the interactive nature of Justballs' web site. Sports Authority maintains that Justballs' interactive web page, available to Michigan citizens, constitutes a contact sufficient to exert personal jurisdiction over Justballs. For the reasons that follow, this Court agrees.

■ In the Internet context, it appears that courts generally determine whether personal jurisdiction is triggered by examining the level of interactivity and commercial nature of the information found on the web site. *See Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418–19 (9th Cir.1997) (citations omitted). Courts facing personal jurisdiction challenges involving web con-

---

4. Furthermore, even assuming that Justballs regularly attended trade shows in Michigan, the gravamen of Sports Authority's causes of action is not Justballs' presence, nor the exhibition of Justballs' products at trade shows. Rather, the gravamen of Sports Authority's complaint is that Justballs' web site is infringing on Sport Authority's marks and consti-

tutes unfair competition. Thus, it is not clear that ·Sports Authority's causes of action flow from Justballs' trade show contacts. As such, the second prong of the Due Process inquiry is not satisfied. *See Burger King*, 471 U.S. at 477, 105 S.Ct. 2174; *Jeffrey*, 448 Mich. at 186, 529 N.W.2d 644.

tacts divide the cases in three categories. It is clear that the ability to download, transmit or exchange information with a defendant via the computer and the presence of on-line contracts between a defendant and a plaintiff are sufficient for a court to exercise personal jurisdiction over a defendant. *See CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1264 (6th Cir. 1996) (holding that defendant had a "substantial connection" with the forum state because he "chose to transmit his software from Texas to CompuServe's system in Ohio, that myriad others gained access to [defendant's] software via that system, and that [defendant] advertised and sold his product through that system.").[5] By contrast, courts have declined to exercise jurisdiction in cases involving passive web sites, i.e., sites that merely provide information to those who seek it. *See, e.g., Cybersell,* 130 F.3d at 418–19; *Bensusan Restaurant Corp. v. King,* 937 F.Supp. 295, 301 (S.D.N.Y.1996), *aff'd,* 126 F.3d 25 (2d Cir.1997). In between these extremes is the third category: cases involving interactive web sites in which a user can exchange some information with the host computer. *See, e.g., Stomp, Inc. v. NeatO, LLC,* 61 F.Supp.2d 1074 (C.D.Cal.1999).

■■■ It is clear that, in determining whether a forum can exercise limited jurisdiction over a non-resident defendant:

[S]imply registering someone else's trademark as a domain name and posting a web site on the Internet is not sufficient to subject a party domiciled in one state to jurisdiction in another. . . . [T]here must be "something more" to demonstrate that the defendant directed his activity toward the forum state.

*Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1322 (9th Cir.1998) (internal citation omitted). *Accord, Cybersell,* 130 F.3d at 418. Thus, publication of a web page, without more, is not an act by which a party purposefully avails itself of the privilege of conducting business in the forum state. *See, e.g., Cybersell,* 130 F.3d at 418 (finding that the district court lacked jurisdiction over defendant despite the fact that the web site invited visitors to e-mail defendant). It is uncontroverted, however, that Justballs sells its products exclusively over the Internet.

One court suggests that the presence of electronic mail access, a printable mail-in order form, and a toll-free telephone number do not amount to "anything more than a passive advertisement which is not grounds for the exercise of personal jurisdiction." *Mink v. AAAA Development LLC,* 190 F.3d 333, 337 (5th Cir.1999). In *Mink,* a copyright infringement case, the court held that personal jurisdiction could not be exercised for two reasons. First, the *Mink* court found that the only exchange of information over the web site was informational replies to e-mails sent by consumers. *Id.* at 337. Second, the web site did not allow consumers to order or purchase products on-line. *Id. See also S. Morantz, Inc. v. Hang & Shine Ultrasonics, Inc.,* 79 F.Supp.2d 537, 541 (E.D.Pa.1999) (holding maintenance of a toll-free number, e-mail and printable lease form on web site insufficient to establish personal jurisdiction).

Justballs contends that the facts in the present action are akin to those in *Mink* and *Morantz* and thus argue that this Court should not exercise personal jurisdiction over this case. The Court rejects Justballs' contention. As set forth in de-

**5.** Perhaps the traditional framework most analogous to posting information on the World Wide Web is placing a product into the "stream of commerce." In *Asahi Metal Indus. Co. v. Superior Ct. of Cal.,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), Justice O'Connor, writing for a plurality, adopted a narrow interpretation of the stream of commerce concept: "[P]lacement of a product into the stream of commerce, without more," is not enough to satisfy the purposeful availment requirement for minimum contacts. *Asahi,* 480 U.S. at 112, 107 S.Ct. 1026. Instead, the Court focused on deliberate availment, requiring additional conduct which "indicate[s] an intent or purpose to serve the market in the forum State." *Id.*

tail below, and in contrast to *Mink* and *Morantz,* Justballs' web site allows users to purchase products on-line.[6] This tips the balance in favor of exerting personal jurisdiction over Justballs. *See Stomp,* 61 F.Supp.2d at 1078.

The Court finds the *Stomp* court's analysis more compelling, especially in light of the parallels between the facts of this case and *Stomp.* In *Stomp,* the court found that the defendant's web site did "something more" to direct activity toward the forum state: It operated as a "virtual store [where] [c]onsumers can view descriptions, prices, and pictures of various products.... add items to their 'virtual shopping cart' and 'check out' by providing credit card and shipping information." *Id.,* 61 F.Supp.2d at 1078 n. 7. Thus, the *Stomp* court found that personal jurisdiction existed:

> ... the nature of NeatO's website is highly commercial. Although NeatO's website provides information about the company, customer service, and technical support, a substantial portion of the site is dedicated to allowing the consumer to purchase NeatO's products on-line. NeatO's on-line sales constitutes conducting business over the Internet, and therefore under the test enumerated in *Zippo,* 952 F.Supp. at 1124, asserting personal jurisdiction comports with due process.

*Id.* at 1078 (internal footnote omitted). Justballs' web site is akin to the site in *Stomp.* From the record before this Court, it is evident that Justballs' web site does more than advertise on the internet.

It appears that Justballs' products are sold primarily through its web site. It is uncontroverted that Justballs does not operate at any retail stores. Justballs' site provides information about itself and its products. Justballs' site also enables customers to contact them from the site via e-mail. Additionally, customers can purchase products online via Justballs' "virtual" store: Customers can search the site for specific products or "browse" through the categories of merchandise on the site; place items in a virtual shopping cart; view descriptions, prices and pictures of products; view items previously placed in the shopping cart; purchase products at the "checkout counter" by providing credit card and shipping information; and track the status of any previous orders. *See, e.g.,* Plf.'s Exs. 1–5. After placing an order, Justballs ships the order to the customer and sends a confirming e-mail to notify the customer that his or her order has been shipped.[7] *Id.*

In sum, viewing the evidence and all reasonable inferences in a light most favorable to Sports Authority, the Court finds that the nature and quality of the contacts made by Justballs support a finding that Justballs solicited, and considering some of the merchandise identified by Sports Authority, perhaps even targeted, Michigan residents. Sports Authority has satisfied this Court that the *Panavision* court's requirement of "something more" has been met. Justballs' site allows users to view a comprehensive product list, a pricing guide, and allows internet users to buy Justballs' products over the internet and

6. Justballs' depiction of the D.C. Circuit's decision in *GTE New Media Serv. Inc. v. BellSouth Corp.,* 199 F.3d 1343 (D.C.Cir.2000) is inaccurate. The *GTE* plaintiffs alleged that the defendants violated the Sherman Antitrust Act by engaging in a conspiracy to dominate the internet business phone directory market. *Id.* at 1345. The level of interactivity was minimal; as the *GTE* court observed, "access to an Internet Yellow Page site is akin to searching a telephone book—the consumer pays nothing to use the search tool, and any resulting business transaction is between the consumer and a business found in the Yellow

Pages, not between the consumer and the provider of the Yellow Pages." *Id.* at 1350. Thus the Court patently rejects Justballs' claim that the level of web site interactivity in *GTE* was far greater than the level of interactivity present here.

7. A person wishing to make purchases first must register on Justballs' web site. In subsequent visits the customer can then track his or her previous order by a unique customer identifier.

contact the company via e-mail. Accordingly, this Court finds that Sports Authority has made a prima facie showing that Justballs' internet contacts constitute purposeful availment.

### 2. Forum–Related Activities

The second element evaluated in the personal jurisdiction inquiry is whether the controversy is related to Justballs' forum-related activities. Sports Authority's six count complaint alleges trademark infringement, dilution and unfair competition under federal and state law. The gravamen of Sport Authority's complaint is that a portion of the content of Justballs' web site both infringes upon Sport Authority's marks and dilutes the marks. Sports Authority also complains that Justballs' use of the allegedly infringing marks unfairly deprives Sports Authority of customers and bolsters Justballs' customer base by capitalizing on Sports Authority's name recognition and good will.

 Injury from trademark infringement occurs in the state where the trademark owner resides. *See, e.g., Panavision*, 141 F.3d at 1322 n. 2; *JB Oxford Holdings, Inc. v. Net Trade, Inc.*, 76 F.Supp.2d 1363, 1366 (S.D.Fla.1999).[8]

 The gravamen of Sports Authority's complaint is that a portion of Justballs' web site wrongfully employs several of Sports Authority's marks and results in unfair competition. The Court is thus satisfied that Sports Authority's causes of action flow from Justballs' web site contacts and purchases. Accordingly, Sports Authority meets the second prong of the Due Process inquiry. *See Burger King*, 471 U.S. at 477, 105 S.Ct. 2174; *Jeffrey*, 448 Mich. at 186, 529 N.W.2d 644.

### 3. Reasonableness

 Where the first two elements of the test for personal jurisdiction are met, there is an inference that the exercise of jurisdiction is reasonable. *See CompuServe*, 89 F.3d at 1268. The factors to consider in assessing reasonableness are:

... the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. [A court] must also weigh in its determination 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.'

*Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (quoting *World–Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. 559); *see also CompuServe*, 89 F.3d at 1267.

 Justballs devotes relatively little argument to these factors, and in fact did not discuss the factors at all in its initial brief. In this Court's view, the only factor that potentially favors Justballs is "the burden on defendant," and given the information the Court has before it, this factor does not weigh so heavily in Justballs' favor as to render jurisdiction unconstitutional.

Justballs argues that Michigan has no stronger interest in this dispute than any other state. Justballs fails to provide any rationale for its conclusory argument. It is true that Sports Authority's marks are national, and there is no evidence in the record demonstrating that injury was mainly or only in Michigan. There was, however, injury in Michigan; and Justballs, by choosing marks allegedly similar or identical to those of a Michigan corporation, assumed the risk of defending an infringement suit in Michigan. The Court finds that important interests of Michigan are in fact at stake.

---

8. Allegations of unfair competition and trademark infringement are ordinarily deemed allegations of tortious injury. *See Keds v. Renee*

*Int'l Trading Corp.*, 888 F.2d 215, 218 (1st Cir.1989) (trademark infringement is a tort).

Justballs maintains that it would be unreasonably burdensome for it to litigate this action in Michigan because its offices are located in New Jersey.[9] Nevertheless, Justballs fails to set forth how specifically it will be burdened apart from having to travel to Michigan for trial.

In sum, for all the aforementioned reasons, the Court finds that the exercise of personal jurisdiction in this case is not unconstitutionally unreasonable.

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss for lack of personal jurisdiction is DENIED.

IT IS SO ORDERED.

9. Conversely, Justball contends that it would not be unduly burdensome to require Sports Authority to litigate in a place where both parties have facilities.