Gerald S. HINNERS, Appellant,

v.

Brad ROBEY, d/b/a Robey's
Pawn World, Appellee.

No. 2009–SC–000389–DG.

Supreme Court of Kentucky.

March 24, 2011.

Richard E. Wentz, Adams, Stepner, Woltermann & Dusing, P.L.L.C., Covington, KY, Counsel for Appellant.

David Michael Andrew, John Michael Dunn, Reminger Co., L.P.A., Ft. Mitchell, KY, Counsel for Appellee.

Opinion of the Court by Justice VENTERS.

Appellant, Gerald S. Hinners, a Kentucky resident, appeals from an opinion of the Court of Appeals determining that Appellee, Brad Robey, a Missouri resident, is not subject to personal jurisdiction in Kenton Circuit Court. Hinners sued Robey over the purchase of a vehicle which Robey had advertised for sale on the Internet auction site, eBay.com. Hinners contends that the requirements of Kentucky's long-

arm statute, KRS 454.210, and federal due process standards for *in personam* jurisdiction over Robey in relation to the transaction, were satisfied.

While we conclude that this particular eBay transaction falls within the parameters of KRS 454.210, we further conclude that this single contractual transaction fails to establish sufficient minimum contacts with Kentucky so as to make it reasonable under federal due process standards for Kentucky courts to exercise personal jurisdiction over Robey in relation to the vehicle sale. We accordingly affirm the Court of Appeals.

## FACTUAL AND PROCEDURAL BACKGROUND

■ In the light most favorable to Hinners,[1] the facts are as follows. Robey, doing business as Robey's Pawn World, is located in Sikeston, Missouri, and Hinners is a resident of Kenton County, Kentucky. In September 2005, Robey advertised for sale, on an eBay[2] auction, a 2002 Cadillac Escalade. The listing described the vehicle as having no prior collision damage, no electrical problems, that it ran remarkably quiet, and that it was "better than average." The listing also advertised a warranty consisting of a "[f]ree 1 month/1,000 mile Service Agreement."

At the conclusion of the auction, Hinners's bid of $25,869.00 stood as the winning offer. In accordance with the conditions of the auction, Hinners traveled to

1. Procedurally, this case was decided in the circuit court by denial of Robey's motion to dismiss for lack of jurisdiction. No evidentiary hearing was held. In ruling on the motion, the trial court considered affidavits and other evidence outside of the pleadings. In such circumstances, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." See CR 12.02. A fundamental principle in summary judgment review is that the evidence is to be viewed in the light most favorable to the nonmovant. *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky.1991). Accordingly, we view the facts in the light most favorable to Hinners.

2. As is generally known, eBay.com is a popular online auction and shopping website through which people and businesses buy and sell a broad variety of goods and services.

Missouri[3] to complete the transaction and take possession of the vehicle. In association with the transfer, Robey executed the necessary vehicle transfer documents to enable the registration of the vehicle in Kentucky, and the vehicle was subsequently titled and registered in this state. When Hinners took possession of the vehicle, Robey again assured him that the vehicle had never been damaged. At the completion of the sale, the parties renegotiated the sales price at $23,000.00 rather than the bid amount.[4]

Immediately after Hinners returned to Kentucky with the vehicle, its electrical system malfunctioned. Hinners took the vehicle to a mechanic for inspection, and was told that the vehicle had suffered extensive prior damage; that almost every panel on the vehicle had been damaged and had been either replaced or filled with body putty; that the vehicle had been completely repainted; and that the front doors and glass had been replaced. Shattered window glass was found in various locations in the vehicle. Following the purchase, Hinners took the vehicle in for repairs on at least six occasions, principally for electrical problems.

Hinners unsuccessfully attempted to contact Robey on several occasions to discuss the matter and to attempt to enforce the warranty advertised on the eBay listing. Having received no response, on December 22, 2005, Hinners filed a Complaint against Robey in Kenton Circuit Court.

The Complaint alleged "that the Defendant defrauded the Plaintiff in that the Defendant knew, or should have known that the vehicle had been extensively damaged and failed to disclose that information to the Plaintiff."

Robey moved pursuant to CR 12.02(b) to dismiss the Complaint for lack of personal jurisdiction on the grounds that he was a non-resident defendant and was not otherwise subject to *in personam* jurisdiction under Kentucky's long-arm statute, KRS 454.210, or under federal due process minimum contact standards. The trial court, however, concluded that it had personal jurisdiction over Robey. After entry of the order overruling his motion to dismiss, Robey failed to further participate in the proceedings. As a consequence, and upon motion by Hinners, the trial court entered a default judgment in favor of Hinners and awarded him damages of $36,320.05.[5] Robey appealed the judgment.

The Court of Appeals, relying in significant part upon similar eBay and Internet cases from other jurisdictions, reversed the trial court's order, concluding that the transaction was a random, fortuitous, and attenuated contact with this state, and, accordingly, that Robey did not have sufficient minimum contacts with Kentucky to allow a Kentucky court to assert personal jurisdiction over him.

We granted discretionary review to examine *in personam* jurisdiction issues in

---

**3.** There is some indication in the record that delivery and execution of the paperwork may have occurred in Illinois; however, the relevant point is that delivery was completed beyond the borders of Kentucky, and whether it was in Missouri or in Illinois is of no significance.

**4.** According to Robey, this renegotiation resulted in the elimination of the warranty, and one of the transactional documents in the record indicates the vehicle was being sold

"as is-no warranty." However, the document was not signed by Hinners. The trial court never resolved this factual dispute, and for purposes of our review, we shall presume the existence of the warranty described in the eBay listing.

**5.** The reason for the significant discrepancy in the purchase price and judgment is not relevant to our review.

relation to Internet sales transactions, such as an eBay auction.

## STANDARD OF REVIEW/BURDEN OF PROOF

■ When a lawsuit is filed in Kentucky against a non-resident defendant, the plaintiff carries the burden of establishing jurisdiction over the defendant. *Auto Channel, Inc. v. Speedvision Network, LLC,* 995 F.Supp. 761, 763 (W.D.Ky. 1997). Because the circuit court did not conduct an evidentiary hearing on the issue of personal jurisdiction in considering Robey's motion to dismiss pursuant to CR 12.02, Hinners "need only make a prima facie showing of jurisdiction." *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1262 (6th Cir.1996) (Applying federal counterpart to CR 12.02).[6] Hinners can meet this burden by "establishing with reasonable particularity sufficient contacts between [Robey] and the forum state to support jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 887 (6th Cir.2002) (citing *Provident Nat'l Bank v. California Fed. Savings & Loan Ass'n,* 819 F.2d 434, 437 (3d Cir.1987)).

■ The question of whether our courts may exercise personal jurisdiction over Robey is an issue of law, and so our review is *de novo. Appalachian Regional Healthcare, Inc. v. Coleman,* 239 S.W.3d 49, 53–54 (Ky.2007) ("The question of jurisdiction is ordinarily one of law, meaning that the standard of review to be applied is de novo.").

## IN PERSONAM JURISDICTION OVER ROBEY IS CONFERRED UNDER KRS 454.210

■ In the recent case *Caesars Riverboat Casino, LLC v. Beach,* 336 S.W.3d 51 (Ky.2011), we reevaluated the requirements for long-arm jurisdiction against a nonresident defendant. Specifically, we overruled *Wilson v. Case,* 85 S.W.3d 589 (Ky.2002) and other cases that had created the impression that the language of KRS 454.210 had been subsumed by federal due process standards for exercising *in personam* jurisdiction over nonresidents. We clarified "that the proper analysis of long-arm jurisdiction over a nonresident defendant consists of a two-step process" under which review first proceeds under KRS 454.210 and, if jurisdiction is permissible under the long-arm statute, only then is jurisdiction under federal due process examined. *Caesars,* 336 S.W.3d at 57. Accordingly, we must first examine jurisdiction over Robey under KRS 454.210 independent of federal due process concerns.

KRS 454.210(2)(a) enumerates nine distinct instances in which Kentucky courts may exercise personal jurisdiction over a nonresident. Before the circuit court, Hinners argued that three of the nine provisions of KRS 454.210 authorized the extension of long-arm jurisdiction over Robey. They are specifically: [7]

---

6. *Cf. Berthelsen v. Kane,* 759 S.W.2d 831 (Ky. App.1988) (Where the material allegations in the complaint are, on their face, sufficient to establish the requirement for Kentucky courts to exercise personal jurisdiction under the long-arm statute, KRS 454.210, but such allegations are refuted by affidavits that contain conflicting factual contentions, the trial court should conduct an evidentiary hearing to establish an evidentiary basis for its resolution of the conflict.)

7. KRS 454.210(2)(a)(5) includes within the long-arm statute cases involving a breach of warranty by a seller of goods who "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth." Since there is no evidence of record that Robey has ever engaged in any other business in Kentucky, this section cannot sustain long-arm jurisdiction over Robey.

(2) (a) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:

1. Transacting any business in this Commonwealth;

2. Contracting to supply services or goods in this Commonwealth;

. . .

4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth. . . .

Long-arm jurisdiction analysis is especially dependent upon the underlying facts of the individual case, so our first undertaking is to identify the relevant factual predicate for our review. Those facts are: (1) Robey, situated in Missouri, advertised the vehicle for sale on eBay; (2) Hinners, in Kentucky, submitted the winning bid; (3) Hinners traveled out-of-state to take possession of the vehicle; (4) Robey executed vehicle transfer documents to enable Hinners to obtain a Kentucky registration and title for the vehicle; (5) Robey, in his eBay listing and in oral statements to Hinners, misrepresented the condition of the vehicle; and (6) the vehicle came to Kentucky covered by Robey's warranty, the one month/1000 mile "service agreement."

We agree with Hinners that Robey's conduct constitutes "Contracting to supply services or goods in this Commonwealth" and therefore KRS 454.210(2)(a)(2) is applicable. A plain reading of the statutory language produces the interpretation that the contract need not be made or executed "in this Commonwealth," but, rather, only that the contract provide for the supplying of services or goods to be transported into, consumed or used in Kentucky. Here, although the final deal was executed beyond Kentucky's border, it was anticipated by the parties from the outset that the vehicle would be transported to and used in Kentucky. Clearly, Robey "contract[ed] to supply services (the warranty) or goods (the vehicle) in this Commonwealth." Subjecting Robey to adjudication in Kentucky is therefore authorized by the statute, *if* the claim asserted against him is one "arising from" his contract to supply services or goods in this state. *Caesars,* 336 S.W.3d at 58.

In *Caesars,* we rejected the use of a *"but for"* test in determining if a plaintiff's claim has "aris[en] from" the specific statutory predicate authorizing *in personam* jurisdiction. Instead, we said that there must exist "a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm-jurisdiction." *Id.* at 58. We held that a slip-and-fall accident in an Indiana casino could not reasonably be construed as "arising from" the casino's "transacting business" in Kentucky by way of advertising and promotional campaigns, and sponsoring civic events in Kentucky. The connection between the tort claim based upon a theory of premises liability and the casino's business activity in Kentucky was far too attenuated. In stark contrast, Hinners's claims for fraudulent misrepresentation and breach of warranty are based upon the very same contract "to supply[ ] goods" (i.e., the Cadillac Escalade) upon which long-arm jurisdiction under the statute is predicated. It is self-evident from the complaint itself that the claims of misrepresentation "arise from"

from Robey's contract to supply goods in Kentucky.

■ Therefore, we conclude that this transaction meets the requirements for long-arm jurisdiction under KRS 454.210(2)(a)(2).[8] Thus, under the two-step long-arm jurisdictional analysis identified in *Caesars,* we proceed to a determination of whether this application of our statute offends the standards of federal due process.

### EXERCISE OF JURISDICTION OVER ROBEY VIOLATES FEDERAL DUE PROCESS STANDARDS

■ We begin with a review of some basic principles underlying federal due process as it relates to long-arm jurisdiction. "[D]ue process requires ... that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). As such, due process protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful "contacts, ties, or relations." *Id.* at 319, 66 S.Ct. 154. By requiring that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign,"[9] the Due Process Clause "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct

will and will not render them liable to suit[.]" *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471–472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

■ Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this "fair warning" requirement is satisfied if the defendant has "purposefully directed" his activities at residents of the forum, *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790, (1984), and the litigation results from alleged injuries that "arise out of or relate to" those activities. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Burger King,* 471 U.S. at 472, 105 S.Ct. 2174.

Thus '[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State' and those products subsequently injure forum consumers. Similarly, a publisher who distributes magazines in a distant State may fairly be held accountable in that forum for damages resulting there from an allegedly defamatory story. And with respect to interstate contractual obligations, we have emphasized that parties who "reach out beyond one state and create continuing relationships and obligations with citizens of another state" are subject to regulation and

---

8. Because we find that long-arm jurisdiction is permissible under KRS 454.210(2)(a)(2), we need not analyze this transaction in terms of the other provisions of the long-arm statute upon which Hinners relied.

9. *Shaffer v. Heitner,* 433 U.S. 186, 218, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) (Stevens, J., concurring in judgment).

sanctions in the other State for the consequences of their activities. *Burger King*, 471 U.S. at 473, 105 S.Ct. 2174 (citations omitted).

■ Further, it is a well-settled principle that exercising personal jurisdiction does not turn on whether the defendant at any point physically entered the forum state.

> Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.

*Id.* at 476, 105 S.Ct. 2174.

■ And finally, "where the defendant 'deliberately' has engaged in significant activities with a State, or has created 'continuing obligations' between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in the forum as well." *Id.* at 475–476, 105 S.Ct. 2174.

■ In *Southern Mach. Co. v. Mohasco Industries, Inc.*, 401 F.2d 374 (6th Cir. 1968), the Sixth Circuit Court of Appeals devised a test for determining the outer limitations of *in personam* jurisdiction based upon a defendant's single act in relation to the forum state, such as we have here. This test is stated as follows:

> The first prong of the test asks whether the defendant purposefully availed himself of the privilege of acting within the forum state or causing a consequence in the forum state. The second prong considers whether the cause of action arises from the alleged instate activities [or consequence.[10]] The final prong requires such connections to the state as to make jurisdiction reasonable.

*Id.* at 381; *see also Wilson*, 85 S.W.3d at 593; *Tube Turns Div. of Chemetron Corp. v. Patterson Co., Inc.*, 562 S.W.2d 99, 100 (Ky.App.1978).[11] Because this is a "single

10. A comparison of the second prong of the test with the first prong discloses that there is a lack of parallelism between the two. Whereas the first prong is met if the defendant purposefully avails himself of the privilege either of acting within, *or causing a consequence* in the forum state, the second prong, as stated in *Mohasco* and *Wilson*, refers only to the acting within the forum state provision of prong one, to the exclusion of the causing a consequence provision. Thus, to achieve congruency between the two prongs, and avoid a potentially anomalous result, it is necessary to extend the inquiry in prong two to ask also, where appropriate, whether the plaintiff's cause of action arises from the consequence caused in the state as found in prong one.

11. As previously noted, in *Caesars*, we abrogated the suggestion as stated in *Wilson* that the Kentucky long-arm statute and federal due process "merge" into a single analysis. With our decision in *Caesars*, therefore, the question may reasonably arise whether our prior adoption of this test survives our determination that analysis under the long-arm statute and federal due process no longer "merge." This test was originally designed with the notion in mind that the long-arm statute could, in effect, be disregarded, and review could immediately proceed to federal due process review. Thus, the reason for our adoption of the test to begin with was to define the outer limits of federal due process. Accordingly, the three-part *Mohasco* test re-

act" case, we will continue our review under the *Mohasco* test.

Upon review of the facts, it immediately becomes apparent that the second prong of the *Mohasco* test is satisfied. As we noted in the preceding section of this opinion, Hinners's claim arises from the in-state consequences set in motion by Robey's contract to supply and warrant a vehicle in Kentucky. However, for the reasons explained below, we conclude that neither the first prong nor the third prong of the *Mohasco* test is satisfied, and thus the assertion of personal jurisdiction over Robey by Kentucky courts in this matter offends his due process rights.

### Purposeful Availment by Acting or Causing a Consequence in Forum State

The first prong of the *Mohasco* test asks whether the defendant purposefully availed himself of the privilege of acting within the forum state or causing a consequence therein. Obviously, by merely posting his eBay advertisement with knowledge that it might attract potential bidders from Kentucky, Robey did not in the traditional sense "purposefully avail" himself of the privilege of *acting* in Kentucky. This method of selling an item created no particular or unique relationship to Kentucky such that it could fairly be said that he purposefully availed himself of the privilege of acting within this Commonwealth. Robey did not limit the auction to bidders from Kentucky or target his advertisement to Kentucky residents, and in fact could not know the resident state of the successful bidder until the auction was complete. *See Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883 (6th Cir.2002) ("A defendant purposefully avails itself of the privilege of acting in a state through its website if the website is interactive to a degree that reveals specifically intended interaction with residents of the state.") (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa.1997)); *cf. Hillerich & Bradsby Co. v. Hall*, 147 F.Supp.2d 672 (W.D.Ky.2001) (In making a determination of whether a nonresident defendant purposefully availed itself of the forum state's laws by entering into a business contract with a forum state resident, the reviewing court must consider prior negotiations of the parties, future consequences contemplated by parties, terms of the contract, and the parties' actual course of dealing.).

Nevertheless, the first prong of the *Mohasco* test may also be satisfied if a defendant has purposefully availed himself of the privilege of causing a consequence in the forum state.[12] In this transaction, (again assuming Hinners's allegations to be true), Robey did in fact cause a consequence in Kentucky by selling a defective vehicle to a resident of the state, with all that entails such as highway safety concerns and automobile repair expenses. But, it may not reasonably be said that Robey "purposefully availed" himself of the privilege of causing that consequence in Kentucky. Robey did not select a Kentucky resident as the purchaser of his vehicle. To the contrary, it was Hinners that elected to do business with a Missouri seller. When the auction was completed, Robey was bound by the auction contract

---

mains an appropriate test for examining long-arm jurisdiction under federal due process limits in cases involving a single contact by the defendant.

12. The term "consequence" is here used in its normal sense, meaning: 1: a conclusion derived through logic: inference; 2: something produced by a cause or necessarily following from a set of conditions. *See* Merriam Webster Dictionary, http://www.merriam-webster.com/dictionary/consequence (last viewed Feb. 21, 2011).

to transfer the vehicle to the purchaser for registration and use wherever that purchaser lived. That the buyer's home state was Kentucky is a purely fortuitous consequence, not a purposeful choice of Robey. Thus, the first prong of the *Mohasco* test cannot be satisfied because Robey did not purposefully avail himself of the privilege of acting in Kentucky or causing a consequence in Kentucky.

### Reasonableness of Jurisdiction in Kentucky

The final prong of the *Mohasco* test considers whether the defendant's connections to the state are such so as to make jurisdiction reasonable. While Internet commerce is, relatively speaking, a new method of transacting commercial activity, nevertheless, traditional federal due process standards remain applicable to the review process:

> The [I]nternet, which is a worldwide interconnected computer network, undoubtedly challenges the 'territorial-based concepts' that courts have traditionally applied to problems of personal jurisdiction.... At the same time, it is equally true that traditional constitutional requirements of foreseeability, minimum contacts, purposeful availment, and fundamental fairness must continue to be satisfied before any activity-including [I]nternet activity-can support an exercise of personal jurisdiction.

*Dagesse v. Plant Hotel N.V.,* 113 F.Supp.2d 211, 221–222 (D.N.H.2000); *Metcalf v. Lawson,* 148 N.H. 35, 802 A.2d 1221, 1225 (2002).

"In analyzing the significance of Internet contacts, therefore, most courts hold that the constitutionality of a State's exercise of jurisdiction is proportionate to the nature and quality of the commercial activity the defendant conducts over the Internet." *Metcalf,* 802 A.2d at 1225; *Sports*

*Authority Michigan, Inc. v. Justballs, Inc.,* 97 F.Supp.2d 806, 812–13 (E.D.Mich. 2000). For assistance in analyzing the nature and quality of a defendant's Internet activity, many courts have adopted the framework developed by the federal district court in *Zippo,* 952 F.Supp. at 1119. This test reads as follows:

> ... the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet. This sliding scale is consistent with well developed personal jurisdiction principles. At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. *E.g. CompuServe, Inc. v. Patterson,* 89 F.3d 1257 (6th Cir.1996). At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction. *E.g. Bensusan Restaurant Corp. v. King,* 937 F.Supp. 295 (S.D.N.Y.1996). The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site. *E.g. Maritz, Inc. v. Cybergold, Inc.,* 947 F.Supp. 1328 (E.D.Mo.1996).

*Zippo,* 952 F.Supp. at 1124; *see also, e.g., Dagesse,* 113 F.Supp.2d at 219–24; *Sports*

*Authority Michigan, Inc.,* 97 F.Supp.2d at 812–14; *Metcalf,* 802 A.2d at 1226. Upon application of the *Zippo* test, a typical single eBay transaction occupies the section of the scale where the defendant has simply posted information on a passive Internet website which is accessible to users in foreign jurisdictions and which does little more than make information available to those who are interested. In such cases, it is presumed that there is no jurisdiction over the defendant, and thus application of the *Zippo* test points in the direction that Kentucky will not have jurisdiction over this transaction.

As made clear in *Zippo,* it bears emphasis that a single listing, as is typical in an eBay sale, is to be distinguished from situations where a dealer maintains an ongoing commercial website. Such a single listing is not part of broader e-commerce activity; the listing temporarily advertises a good for sale and that listing is closed once the item is sold, "thereby extinguishing the Internet contact for this transaction within the forum state (and every other forum)." *Boschetto v. Hansing,* 539 F.3d 1011, 1018 (9th Cir.2008). It follows from this that the "likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of the commercial activity that an entity conducts over the Internet." *Id.* (citing *Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414, 419 (9th Cir.1997)); *Zippo,* 952 F.Supp. at 1124. Accordingly, the maintaining of a large-scale website which is intended to, and does, regularly attract Kentucky business is not at all like the case we address here.

Traditional due process principles relating to the formation of a single contract touching upon the forum state likewise point in the direction that jurisdiction in Kentucky is not permissible because of a single eBay sale. Not surprisingly, forum state jurisdiction has been considered in other cases involving a single contract between a resident buyer and a nonresident seller, albeit in other contexts. These cases have resulted in the development of the well-settled point that a single contract touching upon the forum state will not, standing alone, subject the defendant to jurisdiction. *Burger King,* 471 U.S. at 478, 105 S.Ct. 2174. ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."). Thus, in the usual case, a single contract with a nonresident, whether buyer or seller, and regardless of their method of interaction, will not justify jurisdiction over the defendant. *Tube Turns Div. of Chemetron v. Patterson Co.,* 562 S.W.2d 99 (Ky. App.1978) (Jurisdiction over a nonresident purchaser is not obtained where the nonresident's only contact within the state was negotiation by telephone and mail culminating in a single transaction).[13] A transaction such as the one between Robey and Hinners falls squarely within this rule.

Moreover, as emphasized by the Court of Appeals, a defendant may not be haled into the court of a foreign jurisdiction solely as a result of random, fortuitous, or attenuated contacts, *Keeton,* 465 U.S. at 774, 104 S.Ct. 1473; *World–Wide Volkswagen,* 444 U.S. at 299, 100 S.Ct. 559, or because of the unilateral activity of another party or a third person, *Helicopteros Nacionales de Colombia, S.A.,* 466 U.S. at

---

13. As noted, Hinners alleges that Robey holds a Missouri vehicle dealer's license, which we assume to be true. That, however, is insufficient to overcome the basic principles as discussed above. Even assuming Robey is a automobile dealer, the only evidence of record involving Kentucky is this single transaction.

417, 104 S.Ct. 1868; *Burger King,* 471 U.S. at 475, 105 S.Ct. 2174. A single eBay sale such as in the present case represents a quintessential example of a random, fortuitous, and attenuated contact. Accordingly, this well-established principle weighs against jurisdiction.

In view of the above authorities, we conclude that under traditional principles of federal due process review, in the case of a single contract formed over the Internet and touching upon this Commonwealth, and when the sale is completed and thereafter each party goes his own way, federal due process rules do not permit a resident buyer to summon the nonresident seller into this Commonwealth to litigate the transaction.[14]

Our conclusion is supported by decisions from other jurisdictions which have reached a similar result under comparable facts, and is the majority view. *See, e.g., Boschetto v. Hansing,* 539 F.3d 1011, 1017 (9th Cir.2008) (purchase by California plaintiff of vehicle through eBay from Wisconsin sellers did not permit jurisdiction of defendants because "the lone transaction for the sale of one item does not establish that the Defendants purposefully availed themselves of the privilege of doing business in California" and was "insufficient to have created a substantial connection with California" because it was a "one-shot affair."); *Sayeedi v. Walser,* 15 Misc.3d 621, 835 N.Y.S.2d 840 (N.Y.Civ.Ct.2007) ("No evidence was provided by plaintiff as to defendant's overall eBay statistics, experience, or any marketing directed at potential customers, designed to welcome bids

from New Yorkers or any other acts that indicate defendant may be purposely availing himself specifically to the business of New Yorkers or any desire to take advantage of New York law."); *Karstetter v. Voss,* 184 S.W.3d 396, 405 (Tex.App.2006) (Action in Texas to enforce a Kansas judgment-"There was no evidence that Appellees traveled to Kansas or engaged in other transactions with appellant or other Kansas residents either through the eBay service or otherwise"); *Metcalf,* 802 A.2d at 1227 ("The isolated nature of this transaction and the absence of any evidence that the defendant was a commercial seller militate against a finding of jurisdiction."); *Choice Auto Brokers, Inc. v. Dawson,* 274 S.W.3d 172 (Tex.App.2008) (In action brought by Texas buyer against Florida-based Internet automobile dealer, held that dealer's potential liability for sale did not arise from nor was it related to an activity conducted within Texas, and therefore dealer did not have minimum contacts necessary to support exercise of personal jurisdiction.)

As pointed out by Hinners, there are cases holding the other way in Internet transaction cases. *See,* for example, *Dedvukaj v. Maloney,* 447 F.Supp.2d 813, 820 (E.D.Mich.2006) (When a commercial transaction formed over and through the Internet does not meet a buyer's expectations, sellers should not be surprised that they might be called upon to respond in a legal forum in the buyer's home state); *First Tennessee Nat. Corp. v. Horizon Nat. Bank,* 225 F.Supp.2d 816, 820–21 (W.D.Tenn.2002) (holding limited personal

---

**14.** The warranty provision between Robey and Hinners does not alter our view. As previously noted, KRS 454.210(5) addresses the situation whereby a seller introduces a warranted product into this Commonwealth and thereby causes injury. This provision limits jurisdiction to instances in which the seller "also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth[.]" Therefore, as our long-arm statute specifically speaks to this point, we will not apply a different rule in our federal due process review.

jurisdiction in Tennessee existed over a Kansas bank, where the bank's website stated that it was approved to lend in "All 50 States," and permitted United States residents to obtain mortgage loans, obtain expert loan advise, and receive daily commentary); *Erwin v. Piscitello*, 627 F.Supp.2d 855 (E.D.Tenn.2007) (Exercise of personal jurisdiction over Texas seller on Tennessee buyer's claims for breach of contract and misrepresentation of condition of automobile sold though eBay comported with federal due process.). Nevertheless, upon review of such cases, we find them to be either factually distinguishable or based upon less persuasive analysis than the countervailing cases upon which we base our conclusion. Accordingly, we conclude that the extension of long-arm jurisdiction over Robey under the circumstances of this case exceeds the limits of *in personam* jurisdiction allowed under the Due Process Clause of the federal Constitution.

### CONCLUSION

In summary, we conclude that, although under the circumstances present here the extension of *in personam* jurisdiction over Robey is supported by KRS 454.210, federal due process standards do not permit Kentucky to exercise personal jurisdiction over an out-of-state defendant as a result of a single internet sale, such as an eBay transaction. Therefore, we affirm the Court of Appeals and remand this matter to the Kenton Circuit Court for entry of judgment consistent with this opinion.

All sitting. All concur.